118 Cal.App.2d 336 (1953)
THE PEOPLE, Respondent,
v.
LOUIS BARNETT, Appellant.
Crim. No. 2871. 
California Court of Appeals. First Dist., Div. One. 
June 5, 1953.
 A. J. Zirpoli and C. Harold Underwood for Appellant. *337
 Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.
 WOOD (Fred B.), J.
 The defendant has appealed from a judgment entered upon a verdict of guilty of two counts, one for unlawful possession of a preparation of heroin, and one for an unlawful sale of heroin, each in violation of section 11500 of the Health and Safety Code. He has also appealed from an order denying his motion for a new trial.
 He bases his appeal upon asserted insufficiency of the evidence to sustain the verdict on either count and errors of law occurring at the trial in respect to the admission and exclusion of evidence. We will consider, first, the sufficiency of the evidence.
 The defendant was apprehended by an inspector of the state Bureau of Narcotic Enforcement.
 The inspector gave two marked bills to an operator, not identified by name, who was working under his instruction. The inspector observed this operator when she left him and got into an automobile driven by the defendant. The defendant drove off. The inspector followed for about five minutes, after which they left his view. About one and a half hours later the inspector met the operator at Bush and Mason Streets, San Francisco. The inspector knew nothing of the operator's whereabouts during that interval of time. She handed him a paper which contained heroin. Defendant testified that the first time he saw that paper was when he was in court at the preliminary hearing.
 The inspector then drove to Haight and Octavia Streets and stopped near 150 Haight Street where the defendant resided. He observed defendant's car unoccupied and unlocked. He searched it but found no narcotics. Defendant then approached the car. The inspector with defendant's key opened the trunk of the car and searched but found no narcotics.
 Then they went to defendant's apartment which the inspector searched but found no narcotics. He was there about an hour and a half. In defendant's wallet the inspector found the $5.00 and $20 bills which he identified by serial number. The defendant had on his person altogether between $60 and $70 according to the inspector or between $80 and $85 according to the defendant. Defendant said he did not know where he got those particular bills which the inspector identified; that he had been with a Mrs. Murray that afternoon, who owed him $75 and that afternoon paid him $37.50 of it. *338
 The inspector found a package which contained heroin and two spoons of the kind used by narcotic peddlers, in a closet near to but separate from defendant's apartment. The closet door opened onto the same hall or corridor as did the door to defendant's apartment. The inspector opened the lock on the closet door by means of a key on defendant's key chain, the key with which he had opened defendant's apartment. He did not try the lock to see if any key would open it. He did not know how many keys there were to that closet.
 Defendant said he never saw that package before. A locksmith testified that the lock on the closet had no tumblers; that any key would open it, or a screwdriver, or a dime. The manager of the apartment house said there were 48 apartments in that building, seven on defendant's floor; that on each floor there are two closets one in the front and one in the rear; that she just stored things in these closets; that defendant did not rent the closet adjacent to his apartment; that there was no connection between the apartment and the closet; that she did not know how many keys in her place would open that closet door; and that no one has permission to use the closet. She identified the key in defendant's possession as the key she gave him when he rented the apartment.
 The operator was not produced at the trial and did not testify.
 This is a very tenuous chain of circumstances indeed to support an implied finding that defendant sold the heroin to the operator or that he had possession of the heroin found in the closet.
 The case bears a marked resemblance to certain features of People v. Foster, 115 Cal.App.2d 866 [253 P.2d 50], [fn. *] opinion by Justice Dooling.
 It appeared in the Foster case that about 1:00 a.m. police officers in a patrol car signalled the three defendants to stop defendants' car. As one of the officers was alighting from the patrol car, he saw a small package come from the right front window of defendants' car and fall to the street. This proved to be a narcotic user's outfit. Upon questioning, all three defendants denied any knowledge of the package or its contents "All three defendants were riding in the front seat: Dabney driving the car, Foster in the middle and Phillips on the right side. The officers saw all three defendants moving about in the car but did not see any of the three make any throwing *339 motion. All three both before trial and on the witness stand denied any knowledge of the packet containing heroin and each denied that he had thrown it from the car or seen anything thrown from the car by either of the others."
 "In this state of the record it is perfectly clear that one, if not more, of the defendants was guilty of the possession of the heroin, the problem presented by the record being whether the State proved facts sufficient to justify the jury's finding that either Foster or Phillips was the guilty person or, as it actually found, that both were guilty."
 "Mere presence at the scene of the crime standing alone is not sufficient to justify a finding of guilt. (People v. Le Grant, 76 Cal.App.2d 148, 153 [172 P.2d 554].) The crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance. (People v. Gory, 28 Cal.2d 450 [170 P.2d 433].)"
 "To show such knowing possession the conduct of the parties, admissions or contradictory statements and explanations are frequently sufficient. (People v. Gory, supra, 28 Cal.2d 456; People v. Bigelow, 104 Cal.App.2d 380 [231 P.2d 881]; People v. Rumley, 100 Cal.App.2d 6 [222 P.2d 913]; People v. Torres, 98 Cal.App.2d 189 [219 P.2d 480]; People v. Sinclair, 129 Cal.App. 320 [19 P.2d 23].)"
 "Against Phillips the People argue that sitting where he was he must have seen the object thrown from the window if he did not throw it himself and therefore his denial of all knowledge of it is sufficiently inculpatory. We cannot agree that any person should be convicted of a crime on such a tenuous theory. The defendants were all moving around in the seat, their attention had been attracted to the police car behind them and a tightly wrapped eyedropper is a very small object. To infer guilty knowledge in Phillips from the fact, standing alone, that he testified that he did not see the package thrown from the car would be to permit a conviction on the wildest sort of surmise and conjecture." (Pp. 989-990.) The judgment and order denying a new trial were reversed and remanded as to Phillips.
 [1, 2] Similarly in our case the evidence is insufficient to prove the defendant sold the heroin to the operator or that he had possession or knowledge of the presence of heroin in the closet. The mere fact that the two marked bills, aggregating $25 in amount, were found in his wallet does not prove the sale in question. Nor did his statement that he did not know where he got those bills amount to an admission or a *340 denial indicating a guilty conscience. It is not inherently improbable that a person having bills aggregating $60 to $85 in his possession did not know where, when, or from whom he received two of them. Likewise, his statement that he knew nothing of the heroin in the closet is not inherently improbable in view of the fact that the closet was reserved for the use of the manager of the building and was as accessible to other occupants as to defendant because the lock on the closet door could be opened by means of any key or by a screwdriver, dime, or similar instrument. As to both counts, the judgment and the order appealed from must be reversed.
 In view of this holding it is unnecessary to consider the other grounds upon which defendant bases his appeal.
 The judgment and the order appealed from are reversed.
 Peters, P. J., and Bray, J., concurred.
NOTES
[fn. *] *. Petition for a hearing by the Supreme Court was denied March 9, 1953.