[Crim. No. 3875.   First Dist., Div. One.   May 8, 1961.]

THE PEOPLE, Respondent, v. WILLIE GIVENS, JR., Appellant.

Dorothy P. Young, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Robert R. Granucci, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Convicted of selling narcotics in violation of section 11501 of the Health and Safety Code, appellant vainly contends on this appeal that "the evidence is insufficient to support the judgment" and that because of the absence of the informer at the time of trial, appellant "has not received a fair and impartial trial. . . ." As to the first point, sufficient evidence supports the court's conclusion of appellant's guilt; as to the second point, the fact that delay occurred between the offense and the arrest, and that as a result, the informer

could not be adduced as a witness, does not show that the prosecution deliberately planned the delay for such an unlawful purpose.

The factual history of the case begins with the preparations of two police officers, Toomey and Higgins, of the Narcotics Detail of the San Francisco Police Department undertaken on January 16, 1960, at approximately 9 p. m., when William Russell, an informer, entered their unmarked police car, parked at the corner of Fulton and Steiner Streets in San Francisco. The officers searched Russell and found only some small change but no narcotics. They gave him $20 of city funds.

We first recount the actions of Officer Toomey. Leaving the car, he walked to the northwest corner of Fillmore and Fulton Streets where he stationed himself on the third floor of the corner building. From there he could see north and south on Fillmore and a portion of Fulton. Shortly after communicating by walkie-talkie with Officer Higgins, who had remained in the car with Russell, he saw Russell walk east on Fulton, cross Fulton and start north on Fillmore. As he reached McAllister Street Russell met appellant; they conversed and then both turned the corner, heading east onto McAllister, passing out of Toomey's sight. Toomey next saw Russell come back around the corner alone, proceed south on Fillmore to Fulton, cross the intersection, and then walk west on Fulton until Toomey could no longer see him.

We turn to an account of Officer Higgins' conduct after he observed Toomey's search of Russell. Remaining with Russell in the car until he communicated by walkie-talkie with Toomey, Higgins then let Russell out and watched him proceed east on Fulton, cross Fillmore, and then walk north on Fillmore. Higgins contacted Toomey and drove to the south side of McAllister between Steiner and Fillmore, parking about 40 or 50 yards up from the corner of McAllister and Fillmore.

After a minute or so Higgins observed Russell and appellant engaged in a short conversation at the corner. The pair rounded the corner and walked 10 or 15 feet "down from Fillmore." Higgins observed Russell take his left hand out of his pocket and make contact with appellant's hand. Russell then left appellant, walked to the corner of Fillmore, proceeded "north," and passed from sight. Here the officers directly contradict each other as to the direction in which Russell proceeded, Toomey saying "south" on Fillmore, Higgins saying "north." At any rate, Higgins returned to Fulton

between Fillmore and Steiner; he next saw Russell as he returned on Fulton to the car.

At no time did either officer observe Russell come in contact with any person other than appellant. When he returned to the car Russell handed to Toomey a white paper bindle containing a white powder, which was later shown to be heroin. A second search of Russell revealed the absence of the money previously given him.

At the trial appellant's defense chiefly consisted of his denial that he knew Russell and appellant's assertion that he was in Sacramento on January 16, 1960. Upon appeal he relies on the two propositions stated *supra*. To substantiate his first contention that the evidence does not sustain the judgment, appellant unsuccessfully relies upon six points which we now briefly consider.

First, appellant claims "[t]here is a gap in the chain of proof tending to show" his alleged sale of heroin in that the informer did not at such time come under the "continual surveillance" of the officers. While it is true that the cases demand proof that the informant lacked opportunity to contact anyone other than the defendant at the time of the alleged sale (*People* v. *Morgan* (1958), 157 Cal.App.2d 756 [321 P.2d 873] ; *People* v. *Barnett* (1953), 118 Cal.App.2d 336 [257 P.2d 1041]), the prosecution met that condition here. One or the other of the two officers did see Russell at all times during this sequence of events. The officers saw the informer contact appellant only and no one else. Because of their combined observations, plus their intercommunication by walkie-talkie, the officers maintained a continual, if divided, watch. Appellant failed to show that the prosecution's case disclosed a "gap in the chain of observation. . . ."

Appellant, secondly, asserts an alleged inconsistency of the officers' testimony in that they directly contradicted each other in relation to the direction in which the informer proceeded. Officer Toomey testified that after the alleged sale Russell walked south on Fillmore to Fulton, then west on Fulton, while Officer Higgins said he walked "north" on Fillmore and "east" on Fulton. Obviously Officer Higgins erroneously described the directions since Fulton is south of McAllister and Steiner is west of Fillmore. This error in description obviously does not destroy the prosecution's case; Higgins' correct designation of the involved street names corrected the mistake.

Thirdly, appellant unsuccessfully relies upon the

alleged inadequacy of the presale search of the informer which consisted of a search of his clothing and his person. While it is true that such inspection did not attain the thoroughness of the frequently used "strip search" (*People* v. *Scott* (1959), 170 Cal.App.2d 446, 450 [339 P.2d 162]; *People* v. *Taylor* (1958), 159 Cal.App.2d 752, 755 [324 P.2d 715]; *People* v. *Morgan* (1958), 157 Cal.App.2d 756, 757 [321 P.2d 873]), that procedure is neither exclusive nor essential. In *People* v. *Wilkins* (1960), 178 Cal.App.2d 242 [2 Cal.Rptr. 908], the search of the informer, who wore a tight-fitting knit dress, consisted of feeling along the outside of the dress. In the face of ". . . uncontroverted evidence that the informer was under surveillance during the entire transaction" and in the absence of any showing "to indicate that the informant made any motions toward her body during the period of her surveillance" the court held the search sufficient. (P. 245.) In the instant case the informant remained under constant surveillance; nothing in the record indicates that the officers saw him make any motions toward his body or otherwise, except to remove his hand from his pocket. The search sufficed.

■ Appellant, fourthly, contends that the evidence does not support the officers' identification of appellant as the person who made the sale to Russell. Officer Higgins stated that he saw appellant and Russell at a corner 40 to 50 yards away, and, later, in the light from a cigar store, 60 to 70 yards distant. The argument fails in the face of the identification by both officers.

■ Appellant, fifthly, argues that "inasmuch as the money furnished . . . the informant was not found on . . . [appellant]," the evidence fails to support the judgment. In view of both the long lapse of time between the sale and appellant's arrest, as well as the officers' direct identification of appellant, the absence of the money on appellant's person does not prove the evidence was insufficient. While the presence of marked money in a defendant's possession may create an inference that the defendant sold the contraband (*People* v. *Scott, supra,* 170 Cal.App.2d 446, 456; *People* v. *Wilkins, supra,* 178 Cal.App.2d 242, 245), its absence under the circumstances of this case cannot as a matter of law preclude the conclusion that appellant functioned as the seller.

■ Finally, appellant claims that Officer Higgins' observation of only touching between the informant and appellant, combined with the absence of the $20 turned over to Russell, implies that no double exchange took place. Appellant con-

cedes that such an exchange would at least be possible. The court could therefore properly conclude from the officer's testimony that such an exchange in fact occurred.

Appellant's next major contention is that he did not obtain a fair trial because of the lapse of the long period of time between the alleged sale and the time of his arrest, rendering it impossible "to secure the testimony of a material witness." The argument fails in the absence of proof that the police deliberately delayed the arrest until subsequent to the informer's withdrawal from the jurisdiction.

Appellant seeks, but cannot establish, protection in *People* v. *Kiihoa* (1960), 53 Cal.2d 748 [349 P.2d 673], a case in which the police worked through an informer to implicate the defendant in a sale of narcotics. There the claimed transaction occurred on April 23, 1958; defendant suffered arrest on July 16, 1958; the prosecution filed no charges but released defendant after 51 hours. Defendant brought a civil action for false arrest. On September 29, 1958, however, he was rearrested and brought to trial. A police officer testified that the prosecution originally released defendant so that the prosecution might avoid the possibility of a required disclosure of the informer's identity; that thereafter the informer left the state; that, then, the prosecution rearrested defendant, "it appearing that Stough [the informer] might then be identified without subjecting him to reprisals. . . ." (P. 751.) The Supreme Court held that the prosecution's admissions "that they first arrested, then released and rearrested the defendant in order to avoid the necessity of identifying the informer Stough at the time when the defendant could have procured Stough's attendance at the trial and have elicited testimony from him, would seem to point unerringly to the conclusion that the state sought to circumvent, if not to stultify, the reason for the rule requiring disclosure." (P. 753.) The court accordingly held that "The procedure . . . manifestly denied the defendant a fair trial. . . ."

The facts of the instant case do not parallel those of *Kiihoa.* Officer Toomey testified that he last saw Russell, the informer, at "[t]he end of March"; appellant was arrested on March 31; Townsend, an acquaintance of the informer, stated that "the last time I saw him was the day before he left San Francisco," in "the latter part of March. . . ." No direct testimony, however, showed that the prosecution delayed appellant's arrest until Russell's departure. Indeed, Officer Toomey asserted

that on January 16 although he knew appellant lived in San Francisco, he did not know appellant's exact residence.

While appellant asserts "it would appear more than coincidental that defendant was not arrested until after Russell was absent from the State of California and no longer within the jurisdiction of the Court," we cannot hypothesize that the police intentionally delayed the arrest or sought to effectuate Russell's absence. The instant case basically differs from *Kiihoa* in which the police admitted the postponement of arrest for the express purpose of avoiding the adduction of the informant's testimony. Appellant's position must succumb to the general rule, as recognized in *Kiihoa*, that in the void of specific testimony as to any relation between appellant's arrest and the informer's withdrawal from the state, such departure falls within the terminology of *People* v. *Hammond* (1960), 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289], a "fortuitous incident."

Appellant fails to show the evidence did not substantiate the judgment, and he fails, too, to show any prosecution deliberation or plan in the delay of the arrest for the purpose of avoiding the production of the informer as a witness. The dual failure disposes of the appeal.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 12, 1961.