[Crim No. 4222. First Dist., Div. One. July 11, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM HAWKINS, Defendant and Appellant.

Eleanor M. Kraft, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from conviction of two violations of section 11501, Health and Safety Code (sale of heroin).

### Questions Presented

1. Insufficiency of the evidence.

2. Admissibility of testimony of officer whose memory was refreshed by recording, unintelligible in part.

### 1. Evidence.

On November 6, 1961, State Narcotics Agent Henry Lopez and Richmond police officers met Rudy Lopez at the Richmond Police Department. Rudy was an undercover operator. Rudy was searched, equipped with a radio transmitter, and supplied with $20 of serialized state money. Henry and Rudy then went to downtown Richmond to a shoe store where defendant was working. Henry and Rudy entered the store and met defendant. Rudy and defendant stepped outside for a few minutes. Rudy asked defendant to sell him two papers of heroin. Defendant agreed to do so. Henry and Rudy then went to a coffee shop next door. Defendant, a few minutes later, joined them. He stated that he did not sell narcotics but occasionally did favors for others by ob-

taining narcotics for them. Defendant was called back to the shoe store. Henry and Rudy returned to the police station. The actions of Henry and Rudy were observed by Richmond police officers who overheard over the radio portions of the conversation with defendant. About 6 o'clock that evening, Rudy was again searched, and supplied with money and the transmitter. Henry, two Richmond officers and Rudy drove to Macdonald Avenue, where Rudy left the car and entered the coffee shop, then went into the shoe store and back again to the coffee shop. Defendant then entered the coffee shop, took the money from Rudy, but stated that there were too many people there and that he would call Rudy when he had the heroin.

About 20 minutes later defendant left the shoe store, went into the coffee shop, then out and into a hotel next door, and then back to the coffee shop where he called Rudy and stepped out again. When defendant came out of the hotel he was followed by a man named Green who remained on the sidewalk. Defendant appeared to bend over by the ledge of the shoe store window and then backed away. When Rudy joined defendant on the sidewalk defendant said "There it is." Rudy said "Where?" Defendant said ". . . up on the ledge of the window." Rudy bent over and picked up a small package containing two bindles of heroin from the ledge, which he brought to the officers parked in a nearby parking lot.

On November 8, Henry again met Rudy at the police department, searched him, supplied him with a transmitter and $20 in serialized state funds, and accompanied him down town. Henry and Rudy saw defendant, who at first refused to sell anything and left. Henry and Rudy and a girl named Shirley went to the 605 Club about a block away. There they met defendant who accepted Rudy's invitation to join them for a beer. All four sat in a booth. Rudy and defendant left the table and went to the men's room. There Rudy gave defendant the $20. Rudy returned to the table. Defendant left the place. About 20 minutes later defendant returned, stopped at the booth, and handed Rudy a package containing two bindles of heroin. Henry and Rudy then went to the men's room where Rudy handed Henry the package. Rudy also testified to buying heroin from defendant on November 24. Rudy testified to his part in the transactions; Henry to his. Another police officer testified to

what he could observe of the actions of defendant while he was parked nearby the coffee shop.

After arrest defendant admitted to being an occasional user of heroin and to sometimes doing favors for people by obtaining narcotics for them. His arms and legs bore needle marks and collapsed veins.

At the trial defendant denied selling heroin to Rudy, that of late years he was a user, and that he had made the admissions to the officers.

■ Defendant's contention that the evidence is insufficient is based upon his erroneous contention that where an informer or undercover agent testifies at the trial of the person from whom he claims to have purchased narcotics, the rules applying to the use of an informer who does not testify apply. Thus he asserts that the failure of the police officers to keep the informer under constant observation brings the case within the rule of *People* v. *Barnett* (1953) 118 Cal. App.2d 336 [257 P.2d 1041], where it was held that such failure constituted a fatal flaw in the chain of evidence. This rule does not apply where the operator who actually purchases the narcotics testifies. In all of the cases following *Barnett* (i.e., reversing judgments of conviction) the undercover operator or informer did not testify and the judgments were reversed because other parties from whom the operator might have bought the narcotics were not eliminated as the source thereof. (See *People* v. *Robison* (1961) 193 Cal.App. 2d 410 [14 Cal.Rptr. 181]; *People* v. *Lawrence* (1959) 168 Cal.App.2d 510 [336 P.2d 189]; *People* v. *Morgan* (1958) 157 Cal.App.2d 756 [321 P.2d 873]; *People* v. *Richardson* (1957) 152 Cal.App.2d 310 [313 P.2d 651].) In the instant case the operator, Rudy Lopez, testified that he purchased the narcotics from the defendant. This would merely raise a question of credibility for the jury to consider in light of the fact that he was not under constant observation. The fact is that by his testimony there is direct evidence of the source of the narcotics.

■ It is further asserted that the evidence is insufficient to support the conviction because Rudy Lopez was not stripsearched before his meetings with defendant. This ''procedure is neither exclusive nor essential.'' (*People* v. *Givens* (1961) 191 Cal.App.2d 834, 838 [13 Cal.Rptr. 157]; *People* v. *Sauceda* (1962) 199 Cal.App.2d 47, 53 [18 Cal.Rptr. 452].) Rudy's clothing was thoroughly searched on both occasions. Only the body crevices and his shoes were not examined. It

cannot be said as a matter of law that this search was inadequate in view of the lack of any facts indicating that Rudy might have been concealing narcotics.

 Defendant next contends that the observations of the investigating officers were insufficient to establish guilt because of bad lighting in the bar and the distances involved in the street observation. The officers's testimony was for the evaluation of the jury. This court cannot reject it unless it is "wholly unacceptable to reasonable minds." (*People* v. *Wilburn* (1961) 195 Cal.App.2d 702, 706 [16 Cal.Rptr. 97].) The testimony cannot be so characterized. Agent Henry Lopez testified that the street observation was clear, the area being well lit by street lights, and that his view of the event was unobstructed. The officers' car, from which they were watching, was a "short city block" away. The testimony of a defense witness, a professional photographer, to the effect that it would be difficult to recognize a person under the conditions of the street observations was merely a factor for the jury to weigh. While the bar was poorly lit, Agent Henry was sitting a table width from the defendant when he stated he saw him pass a package of heroin to Rudy Lopez. Again, the testimony of the photographer as to the effect of the lighting in the bar on the observation of Agent Henry was a matter for the jury to consider.

 Defendant also contends that the testimony of Rudy Lopez cannot be used to support the conviction because in itself it was somewhat contradictory and there were various inconsistencies between it and the testimony of the officers in regard to a number of unimportant factual details. Defendant contends that these contradictions show Rudy's testimony to be improbable and demonstrate that Rudy's testimony was fabricated. Testimony in support of a judgment will not be disregarded on appeal unless it amounts to a physical impossibility. "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People* v. *Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758].)

2. CONVERSATIONS HEARD ON RADIO.

 It is lastly contended that the court erred in admitting the testimony of an officer regarding conversations occurring on November 24, 1961, which he overheard by

means of a transmitter attached to Rudy's body. The officer testified that he could not hear all of the conversation because of static and other interference. Parts of a tape recording made of the radio reception were similarly unintelligible. The officer testified to what he heard on the radio, having refreshed his memory by listening to the tape before the trial.

Defendant, relying on *People* v. *Mulvey* (1961) 196 Cal. App.2d 714 [16 Cal.Rptr. 821], claims that it was error to allow the officer to testify to the portions of the conversation he overheard. In *Mulvey,* the court held that it was improper to play "recordings to juries without preserving a record of the evidence which reaches the jury in this fashion," as it was therefore impossible for the reviewing court to determine what was contained in the recordings. Further, the court, although it did not rule inadmissible, criticized "the playing of records of conversations which are in substantial part indistinguishable as a most unsatisfactory type of evidence." (P. 719.) The court there did not discuss the manner in which the recordings were used in the case at bar, namely, for refreshing the memory of a witness who heard the conversation as it was being recorded. Defendant, asserting that the tape recording is the best evidence of the conversations overheard, argues, therefore, that no testimony as to the conversations could be admitted. He is in error. The tape recording is not the best evidence of the conversation. The officer's testimony is " 'primary evidence' whether or not 'part of the same matter was incorporated into a sound recording.' (*People* v. *Sica* (1952) 112 Cal.App.2d 574, 588 [247 P.2d 72].)" (*People* v. *Sweeney* (1960) 55 Cal.2d 27, 38 [9 Cal.Rptr. 793, 357 P.2d 1049].) The method of testifying employed here was approved in *Sweeney* and in *People* v. *Kulwin* (1951) 102 Cal.App.2d 104, 109 [226 P.2d 672], both involving recordings in part unintelligible. Defendant's contention is without merit. (See also *People* v. *Ketchel* (1963) 59 Cal.2d 503, 519 [30 Cal.Rptr. 538, 381 P.2d 394], and *People* v. *Dupree* (1957) 156 Cal.App.2d 60, 68 [319 P.2d 39].)

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.