Gordon SPRIGGS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A-16715.

Court of Criminal Appeals of Oklahoma.

June 5, 1973.

Alfred L. Bowman, Altus, for appellant.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., James E. Briscoe, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Gordon Spriggs, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Jackson County, Case No. CRF–70–123, for the offense of Unlawful Sale of a Stimulant, his punishment was fixed at five (5) years imprisonment in the State Penitentiary and a one thousand dollar ($1,000) fine, and from said judgment and sentence

a timely appeal has been perfected to this Court.

At the trial Sid Cookerly, an agent with the Oklahoma State Bureau of Investigation, testified that on December 10, 1970, he called a young lady from Oklahoma City, Nancy Standerfer, to meet him at the Sheriff's Office in Altus; that he had known Nancy for approximately one year and that she worked for him as a confidential informant on narcotics. He directed a search of her person and directed that her car be searched. At approximately 11:00 p. m. he followed her to Thelma's Cafe. Approximately fifteen minutes later she came out of the cafe with an unidentified male subject. He followed them to a house at 1101 North Hudson. At approximately 11:35 p. m. Nancy left the house and he met her at a prearranged location. He gave her two fifty dollar bills to purchase narcotics. He followed her back to the residence on North Hudson. At approximately 1:10 a. m. Nancy and another individual left the house in Nancy's car, returning about fifteen minutes later. She went back into the residence and remained until around 2:15 a. m. She gave him a piece of bubble gum which contained a crushed tablet and another small, round green tablet. He sealed the items in a matchbox and subsequently delivered it to the State Bureau of Investigation Laboratory for analysis.

Nancy Standerfer testified that on December 10, 1970, she went to Altus at the request of Mr. Cookerly. At the Sheriff's Office she had a conversation with Cookerly and was searched. At approximately 11:45 p. m. she went to the cafe and ordered some hot chocolate. The defendant came into the cafe and after a short conversation, invited her "over to his house." The defendant left with her and they proceeded to a house at 1101 North Hudson. They went into the house and she was introduced to several persons. The defendant offered to sell her fifty (50) tabs of LSD for one hundred dollars ($100). She told defendant that she would go cash a

traveler's check and left the house. She met Agent Cookerly at a prearranged location and he gave her two fifty dollar bills. She returned to the house and "they were talking about that they had already dropped." (Tr. 43) The defendant asked her if "I would like to drop" and she bought one tablet. The defendant told Sherri to get the tablet out of her purse. She laid down two dollars and the defendant picked it up and put it in his pocket. She pretended to take the tablet, but instead stuck it into the bubble gum she was chewing. Another person in the house informed her that he could obtain for her a larger quantity and she left with him, attempting to purchase the tablets. On ascertaining that the person could not arrange the purchase, they returned to the house. She went upstairs and purchased another tablet from the defendant, giving him two dollars. She subsequently met Agent Cookerly at the prearranged location and gave him the bubble gum containing the tablet and the second tablet.

Jay Lowell, a narcotics officer for the Jackson County Sheriff's Office, testified that he searched Nancy Standerfer's car on the evening in question and assisted with the subsequent surveillance.

John McAuliff, chemist with the Oklahoma State Bureau of Investigation, testified that he conducted a chemical analysis of the two tablets and that in his opinion they contained LSD. On cross-examination he testified that he made a qualitative rather than a quantitative analysis of the tablets.

For the defense Sherri Cockings testified that she met Nancy Standerfer at 1101 North Hudson on the evening in question; that she was at the residence all evening and that she did not see the defendant take any money from Nancy Standerfer.

The defendant testified that he met Nancy Standerfer at Thelma's Cafe and invited her "over to my house." She accompanied him to the house and he introduced

her to the various people there. Nancy asked him about purchasing drugs. He told her that there were drugs in the house and that if she wanted to purchase some, she would have to talk to Artie Parks,[1] that they were his drugs. He observed Artie Parks give her a tablet which she took. He denied selling her any tablets and denied receiving any money from her.

Defendant first asserts that the search of the informer prior to the purchase of the narcotics was insufficient in that the informer was a "known user of narcotics" and that the informer was not under constant visual surveillance. We first observe that the record does not reflect that the informer, Miss Standerfer was a narcotic addict. She testified that she had taken LSD "maybe half a dozen times, if that years ago." She testified further that "I had used some speed in another case." (Tr. 53) Agent Cookerly testified that "she was a very competent, reliable employee" and that she assisted him in the investigation of "a hundred individuals."

Defendant cites as authority People v. Givens, 191 Cal.App.2d 834, 13 Cal.Rptr. 157 wherein the California Court held that a strip search is not required when the informer is under constant surveillance by the police until a drug purchase is made. Defendant argues that since the informer in the instant case was not kept under constant observation, a more complete search than the one conducted was required. We are of the opinion that Givens, supra, is distinguishable from the instant case in that in Givens the informant did not testify, where in the instant case Miss Standerfer did testify at the trial. In People v. Hawkins, 218 Cal.App.2d 151, 32 Cal.Rptr. 392 the court stated:

"Defendant's contention that the evidence is insufficient is based on his erroneous contention that where an informer or undercover agent testifies at the trial of the person from whom he claims to have purchased narcotics, the rules

applying to the use of an informer who does not testify apply. Thus he asserts that the failure of the police officers to keep the informer under constant observation brings the case within the rule of People v. Barnett, (1953) 118 Cal.App.2d 336, 257 P.2d 1041, where it was held that such failure constituted a fatal flaw in the chain of evidence. This rule does not apply where the operator who actually purchases the narcotics testifies."

■ The California Court further held that if the informer does testify at the trial, the failure to keep him under constant surveillance: ". . . would merely raise a question of credibility for the jury to consider . . ." In the instant case, Miss Standerfer was carefully searched by Agent Cookerly prior to leaving the Sheriff's Office. A strip search was not conducted but her clothing and hair were carefully examined. Agent Cookerly testified that he was satisfied she had no narcotics on her person. Jay Lowell testified that he searched Miss Standerfer's automobile and that he found no drugs. We are of the opinion that the presale search in the instant case was adequate.

■ The second proposition contends that the State failed to prove a "usable amount." Defendant cites as authority State v. Quinones, 105 Ariz. 380, 465 P.2d 360 wherein the Arizona Court stated:

"The amount of heroin involved here is very small, amounting to only .36 miligrams. Defendant correctly points out that under State v. Moreno, 92 Ariz. 116, 374 P.2d 872, and State v. Urias, 8 Ariz.App. 319, 446 P.2d 18 (1968), where the amount of narcotics involved is so small as to not be within the realm of an uninformed layman's knowledge of usability, there must be evidence presented by the State as to its usability and also an instruction to the jury as to the necessity of finding a usable amount."

1. Artie Parks was identified in Lynn v. State, Okl.Cr., 505 P.2d 1337 as a police informer.

We are of the opinion that the better rule was stated by the Wisconsin Court in State v. Dodd, 28 Wis.2d 643, 137 N.W.2d 465 wherein the Court stated:

"The majority rule seems to be that possession of a modicum of an illegal drug is sufficient to bring the defendant within the purview of the statute."

The Court further stated:

"A modicum means a little or small quantity and this is to be understood in relationship to the nature of the drug. The amount need not be a usable amount and it was said the quantity of the drug possessed is not material. Peachie v. State, supra. This view is taken because the statute does not prescribe any minimum amount which must exist. Narcotics are contraband and dangerous, causing untold harm to users and to the public by illegal use. A more liberal interpretation favorable to drug addicts and those illegally dealing in narcotics cannot reasonably be given."

For similar holdings see People v. Norman, 24 Ill.2d 403, 182 N.E.2d 188 and Peachie v. State, 203 Md. 239, 100 A.2d 1.

■ The third proposition asserts that the trial court failed to give a cautionary instruction concerning the informer's testimony and further failed to instruct on the term "usable amount." We need only observe that the defendant did not object the court's instructions nor were any written requested instructions submitted. In Schapansky v. State, Okl.Cr., 478 P.2d 912 the Court stated:

"Where counsel is not satisfied with instructions that are given, or desires court to give any particular instruction, or to more definitely or sufficiently state any propositions embraced in instructions, it is the duty of counsel to prepare and present to the court such desired instructions and request that it be given and in absence of such request, Court of Criminal Appeals will not reverse case if instructions generally cover subject matter of inquiry."

We therefore find this proposition to be without merit.

■ The next proposition contends that the verdict is not sustained by sufficient evidence. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

■ The final proposition contends that the punishment is excessive. We are of the opinion that this proposition is well taken. Considering the totalitary of the circumstances including the defendant's age, the amount of LSD involved, and defendant's prior good record, we are of the opinion that justice would best be served by modifying the judgment and sentence to a term of two and one-half (2½) years imprisonment and as so modified, the judgment and sentence is affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissenting):

I respectfully dissent to this decision for the same reasons expressed in Lynn v. State, Okl.Cr., 505 P.2d 1337 (1973). This Court is authorized to consider other records before the Court and to take judicial knowledge thereof, when such records cast light upon any matter before the Court. See: Jones v. State, Okl.Cr., 341 P.2d 616 (1959); Baeza v. State, Okl.Cr., 453 P.2d 271 (1969); and Moore v. State, Okl.Cr., 436 P.2d 236 (1968). In Lynn, supra, it became clear that Arthur "Artie" Parks was one of the police informers. Parks furnished the LSD which was used

to make the sale to the paid informer, Nancy Standerfer. Parks sent defendant to Thelma's Cafe for the sole purpose of facilitating the meeting between the paid informer and defendant. Parks worked with the police and the paid informer during the night to facilitate the sale of LSD to Nancy Standerfer. Therefore, I conclude if Clarence Lynn was entrapped by the informers, this defendant was also entrapped.

The United States Supreme Court, in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), repeated with approval what was said in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), as follows:

> "The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, 'A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.'" Citing Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413 (1935).

As I view the facts of this case, the informer Parks must have been working with the police in such a manner as to assure that the narcotics would be present at 1101 North Hudson at the right time; otherwise, he would not have delivered the LSD to the house only a few days prior to the time set for the alleged buy.

While I do not contend that defendant was an "innocent person" from the view of not participating in the use of drugs, there was nothing to show that he was "predisposed" as a seller of drugs, as contemplated by the term "innocent person." Therefore, I respectfully dissent to this decision.