[Crim. No. 7387. Third Dist. Aug. 6, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
SHARON LANGLEY, Defendant and Appellant.

In re SHARON LANGLEY on Habeas Corpus.

## COUNSEL

Jack V. James, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

Evelle J. Younger, Attorney General, and Roger Venturi, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**REGAN, J.**—After trial by jury, defendant was convicted of two counts of unlawful sale of heroin (Health & Saf. Code, § 11352) and one count of unlawful possession of a controlled substance (heroin) for sale (Health & Saf. Code, § 11351). She appeals from the judgment of convictions.

Defendant filed her opening brief on March 26, 1974. On that same date she also filed a petition for writ of habeas corpus. On April 12, 1974, we issued an order to show cause and consolidated this matter with the appeal. (See *In re Hwamei* (1974) 37 Cal.App.3d 554, 556-557 [112 Cal. Rptr. 464].) In the petition for writ of habeas corpus, petitioner cites numerous examples of alleged inadequacy of counsel. She also make this contention in her opening brief. We shall combine all of these allegations and treat them together after first disposing of defendant's other contentions on appeal.

### FACTS

Michael Galardi (alias Todd) was an admitted user and seller of heroin in Shasta County prior to trying to overcome his habit through a methadone treatment program. During May of 1973, local law enforcement officers approached Todd and he agreed to act as an undercover agent. He was placed under the direct supervision of Sergeant Brewer of the Shasta County Sheriff's office and was paid approximately $125 per week for the three months he worked in this capacity.

During the time Todd worked for the law enforcement agency, Brewer was in constant contact with him and Todd claimed that throughout this period he was not using heroin. Brewer testified that he observed no physical symptoms of heroin use in Todd.

Todd had known the defendant Sharon Langley for about 18 months and had been a regular visitor in her house. On July 3, 1973, Todd telephoned defendant and arranged to buy several "quarter T's" of heroin. Todd informed Sergeant Brewer of this arrangement, whereupon Brewer and Officer Jackson met Todd and his person and car were thoroughly searched and he was given $60. The two officers followed Todd to defendant's house keeping him under constant surveillance. Upon entering defendant's house, Todd noticed that a number of people were there, including one Jim Hash who was suffering withdrawal symptoms. Todd gave defendant the money and she reached into the pocket of the robe

she was wearing, took out a bobby pin box, in which there were probably 10 or 12 spoons of heroin, and handed him three paper packets of heroin. As Todd attempted to leave, Hash begged him for some of the heroin, saying he would pay it back to Todd the next day. Todd was nervous and afraid it might endanger his cover if he refused so he gave Hash one packet, left the house and returned to meet Sergeant Brewer and Officer Jackson. He turned over the two remaining packets of heroin and another search of Todd and his car was conducted by the officers.

Since Todd was a regular visitor at defendant's house, he learned that she was dealing in "spoons." On July 14, 1973, Todd telephoned defendant and arranged to buy a spoon that afternoon. Todd informed Sergeant Brewer and then met the same officers again and they thoroughly searched Todd's person and his car. Todd was again supplied with cash for the buy, and this time a remote transmitter was secreted on his person. The officers again kept him under surveillance as he proceeded to defendant's house and watched as he disappeared through the door. The house was full of people. Todd exchanged the money given him for a balloon containing one teaspoon of heroin which defendant took from her pocket. Todd was inside the house about two minutes.

A transcript of the recorded conversation revealed that Todd asked if it had been cut and a female voice said, "No. I am just separating it." The same voice assured him it was good stuff.

Todd departed, met the officers, turned over the heroin to them, and was again subjected to a search.

On one of his visits to defendant's house, Todd heard defendant and Dempsey Heffley talking about defendant's stash of narcotics. Defendant said she kept her "outfits" and the heroin over the backyard fence in some weeds covered by a board.

On August 13, 1973, Todd helped arrange a meeting between defendant and a known heroin supplier, George Morgan. Defendant and Morgan discussed the quality of the heroin. They decided that the middleman, Mike Mitchell, was cutting the heroin short, and Morgan agreed to deal directly with defendant.

On August 31, 1973, Sergeant Brewer executed an arrest warrant for defendant and a search warrant for her house. Between 7 and 8 a.m., uniformed Officers Wort and Cilenti approached defendant's house, went directly to the front door and knocked. Terri Wilson came to the door, pulled the drapes aside and looked out. Wort asked to speak to defend-

ant and stated that they had a message for her. Terri said, "Just a minute," and dropped the drapes back into place. Wort then shouted that he was a police officer, that he had a search warrant and to open the door. Following his announcement he heard the shuffling sounds of feet moving inside the house. Wort waited a few seconds and again said "Open the door." He waited about an equal length of time and again demanded that they open the door or they would kick it in. There being no response from the occupants, the officers kicked in the door and entered the house. There were several people in the house, including the defendant.

During the search of the backyard fence area, officers discovered, under a board a few inches beyond defendant's fence in a neighbor's yard, a plastic container with five rubber balloons containing heroin, a plastic bag containing a Tiparillo cigar box, a small metal can and a hypodermic syringe. Heroin was found in two folded paper bindles inside the metal can. Another five balloons also contained heroin. The amounts involved and the packaging indicated that it was being held for sale.

Four paper squares similar to those used to wrap the heroin were found on the bookcase in defendant's living room. Defendant had at least three fresh hypodermic marks on her lower, right arm. Following her arrest, defendant wrote something on a piece of paper, handed it to a Lola May Bessey and told her to call that person. It was George Morgan's telephone number. Defendant subsequently complained about suffering withdrawal symptoms and had to be taken to a hospital for treatment.

The main trust of the defense was the impeachment of the undercover agent Todd. The defense attempted to show that Todd, during the period in question, was a user and pusher of heroin, that the stash behind defendant's house in actuality belonged to Todd, and that Todd was a liar. Defendant, and several of her good friends (many of whom had stayed at her house at one time or another), gave testimony to this effect. Defendant, and some of these same witnesses, denied that she was selling or using heroin. There was also testimony from defendant's parole officer that he supervised her during this time, and he observed no obvious signs that she had been using narcotics.

On rebuttal, the prosecution called two of defendant's neighbors who testified that there was a lot of traffic in and around defendant's house. People would arrive in cars, enter defendant's house, stay for a short time, and then depart. Sergeant Brewer again gave his opinion that Todd had not been using drugs.

Defendant contends that the evidence is insufficient to support the

verdict. Her main contention is that Todd was a liar and thus incapable of belief.

■ The general principles for appellate review in a criminal case are well established: "The applicable rules for appellate review in a criminal case are clear. The function of an appellate court begins and ends with a determination of whether there is substantial evidence, contradicted or uncontradicted, which will support the judgment. [Citation.] The evidence must be viewed in the light most favorable to the prosecution and the court must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] Where the circumstances reasonably justify the conclusion of the trier of fact, the opinion of the reviewing court that circumstances may also be reasonably reconciled with a contrary finding does not warrant reversal of the judgment. [Citations.]" (*People* v. *Rupert* (1971) 20 Cal.App.3d 961, 969-970 [98 Cal.Rptr. 203].)

■ Without reciting the evidence in detail, we note that here there were two closely supervised and controlled buys of heroin by Todd from defendant. This alone is sufficient to support the two convictions for sale. (*People* v. *Hawkins* (1963) 218 Cal.App.2d 151, 154-155 [32 Cal.Rptr. 392].) The testimony relied upon by the jury certainly cannot be deemed inherently improbable. (See *People* v. *Bryant* (1958) 157 Cal.App.2d 528, 534-535 [321 P.2d 45].) ■ In addition, the quantity of heroin and type of packaging found alongside defendant's backyard fence indicated it was intended for sale and thus supports the third conviction, since it was in defendant's custody and control. (See *People* v. *White* (1958) 50 Cal.2d 428, 431 [325 P.2d 985].)

Simply put, the jury here was faced with two conflicting versions. ■ " 'Where [the] testimony is not inherently improbable it is the exclusive province of the jury to determine the truth of the matter in question.' " (*People* v. *Bodkin* (1961) 196 Cal.App.2d 412, 415 [16 Cal.Rptr. 506].) There is nothing "inherently improbable" about Todd's testimony, and we find that there was substantial evidence to support the verdict. (See *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

■ Apparently, defendant is also arguing that since Todd was a drug user and pusher himself, his credibility is highly suspect. This argument does not follow, for a known criminal or a drug addict may become a reliable informant. (See discussion in *People* v. *Griffin* (1967) 250 Cal. App.2d 545, 551 [58 Cal.Rptr. 707].) Here, Todd not only supplied the

tips but testified in open court. Todd was subjected to vigorous cross-examination and yet the crucial aspects of his testimony came through unscathed. ■ Furthermore, even if it be assumed that Todd lied regarding his use of heroin during the time in question, it would not change the result, for his testimony was not "incredible," and the trier of fact may reject a part of the testimony of a witness while believing other portions of his testimony. (*People* v. *Bodkin, supra,* 196 Cal.App.2d at pp. 414-415; *Pierson* v. *Superior Court* (1970) 8 Cal.App.3d 510, 519 [87 Cal.Rptr. 433] [testimony must be so inherently improbable as to constitute no evidence at all].) As we have stated, the evidence is legally sufficient to support the verdict. (See *People* v. *Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758].)

Defendant contends she was entrapped by impermissible police conduct as she had no predisposition to commit the crime charged. There is no merit to this contention. ■ ■ *People* v. *Benford* (1959) 53 Cal.2d 1, 10-11 [345 P.2d 928], provides the complete answer to this argument: "California formulations of the doctrine of entrapment state that the availability of the defense depends upon whether the intent to commit the crime originated in the mind of defendant or in the mind of the entrapping officer [citations], and that where a defendant has a preexisting criminal intent, the fact that when solicited by a decoy he commits a crime does not show entrapment [citations]. Similarly, the United States Supreme Court says that the defense is available 'when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute,' but 'the fact that government agents "merely afford opportunities or facilities for the commission of the offense does not" constitute entrapment.' [Citations.]

"The California courts say that 'It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers . . .' [Citations.] The United States Supreme Court says that 'To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.' [Citation.]" (Fn. omitted.)

■ In view of the foregoing, defense counsel was not incompetent for failure to raise the defense of entrapment since such a defense was not available to him. There is here no showing of improper or compelling persuasion on behalf of the police officers. Here, the police merely afforded an opportunity for a willing seller of a controlled substance. (See *People* v. *Asta* (1967) 251 Cal.App.2d 64, 80-81 [59 Cal.Rptr. 206].)

Defendant prior to the swearing in of the first witness, and out of the presence of the jury, admitted a prior conviction for the sale of heroin in August of 1972. On direct examination by her counsel, she admitted to the conviction of a sale of heroin.

During the cross-examination of Terri Wilson and Donavon Hash, two of defendant's witnesses, the prosecutor elicited admissions that defendant had used and sold heroin in the past. Both of these witnesses had testified strongly in defendant's behalf. This was an obvious attempt by the prosecutor to impeach these witnesses. (See 3 A Wigmore on Evidence [Chadbourn rev.] § 950, pp. 792-795.) This testimony was elicited by the prosecutor *not* to show that the defendant had a criminal propensity for the crimes charged (see *People* v. *Kelley* (1967) 66 Cal.2d 232, 238-239 [57 Cal.Rptr. 363, 424 P.2d 947]), but to show that her favorable witnesses were aware of her past wrongdoing and thus show personal bias in order to protect their friend. (Wigmore, *op. cit.*) In later testimony, the defendant admitted her conviction for the sale of heroin. Under all the circumstances, even if there was prosecutorial error (which we do not concede), there was no prejudice. (See *People* v. *Horn* (1960) 187 Cal.App.2d 68, 75 [9 Cal.Rptr. 578]; cf. *People* v. *Granillo* (1934) 140 Cal.App. 707, 717-718 [36 P.2d 206].)

Defendant contends that the officers had no right to force an entry into defendant's dwelling when they were attempting to serve an arrest and search warrant. (See Pen. Code, §§ 844, 1531.) There is no merit to this contention. There is no need to review all of the facts. Suffice it to say, the officers identified themselves, quite clearly stated their purpose, and demanded entrance. They were refused. We find no error. (See *People* v. *Schad* (1971) 21 Cal.App.3d 201, 207-208 [98 Cal.Rptr. 439].)

Defendant contends the trial judge was remiss in his duties. She states: "The judge is not a mere umpire presiding over contests of wits between professional opponents, but a judicial officer entrusted with the grave task of determining where justice lies under the law and facts between parties who have sought protection of the Courts. It is not only right, but also the duty of trial judges to clearly bring out facts so that important functions may be fairly and justly performed.

"It is the judge's duty to see that the cause is not defeated by mere inadvertence or want of attention and to point out omissions in evidence and defects in pleadings, which are likely to result in decisions other than on the merits."

This is a grave and serious charge. Fortunately, it is entirely lacking

in merit. The trial judge in this case is a seasoned and experienced jurist. From our examination of the entire record, we can find no misconduct, omissions, or error on the part of the court. Defense counsel on appeal appears to forget that his client was judged by a jury of her peers. This jury disbelieved her friends.

As we have previously noted, defendant raised the issue of inadequacy of counsel. ■■■ We note the following principles: If trial counsel's lack of diligence or competence results in withdrawing a crucial defense from the case, reducing the trial to a farce or a sham, the defendant has not had the effective assistance of counsel to which he is entitled under the Sixth Amendment. (*People* v. *Najera* (1972) 8 Cal.3d 504, 516 [105 Cal. Rptr. 345, 503 P.2d 1353].) The defendant, however, must affirmatively show that the omissions of trial counsel involved a critical issue, and that such omissions cannot be explained on the basis of knowledgeable choice of tactics. (*People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64].)

Defendant contends her trial counsel was inadequate because he made no motions for reduction of bail, discovery, suppression of evidence, or change of venue.

As to bail, counsel requested that she be released on her own recognizance. This motion was denied. Bail was set at $2,500. ■■■ A lack of a motion to reduce bail certainly does not show ineffective assistance of counsel. (See *People* v. *Hill* (1969) 70 Cal.2d 678, 688-689 [76 Cal.Rptr. 225, 452 P.2d 329].)

■■■ As to discovery, the Attorney General properly points out that defense counsel availed himself of the "informal discovery" offered to defense counsels by numerous district attorneys throughout the state. The courts have long made it known that a criminal trial is not a game of "hide-and-go-seek." Defense counsel was well aware of this.

The suppression of evidence charge has no merit.

■■■ In the habeas corpus petition, there is no showing for any possible relief. (See *In re Swain* (1949) 34 Cal.2d 300, 303-304 [209 P.2d 793].) The tactic of counsel here was, of course, to impeach Todd and try to prove that defendant was "clean." The fact that this defense failed does not show incompetency of counsel. (See *People* v. *Pineda* (1973) 30 Cal. App.3d 860, 867 [106 Cal.Rptr. 743].)

■■■ As to change of venue, defendant's bare allegations of an inflammatory, hostile populace are not supported by any substantive evidence

whatsoever. Although this court may take judicial notice of media coverage in a proper case (see Evid. Code, § 451, subd. (f)), it is not incumbent to do so here merely upon the naked assertions of defendant. (Cf. *Corona* v. *Superior Court* (1972) 24 Cal.App.3d 872, 876 [101 Cal.Rptr. 411].) On August 31, 1973, defendant was arrested. She was not put on trial until December 4. Thus, there was a lapse of three months during which any alleged adverse publicity would have died down. We find no inadequacy on the part of trial counsel. (Cf. *Sheppard* v. *Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d 600, 86 S.Ct. 1507].)

Defendant further contends trial counsel was incompetent because he failed to accede to her request for a lie detector test. Again, there is no factual information concerning this request nor any asserted prejudice. (See *People* v. *Hill, supra,* 70 Cal.2d at pp. 688-689.) ▇ Even assuming, arguendo, that defense counsel refused defendant's request, this certainly does not show counsel's inadequacy since the elements of such a test could not be admitted into evidence for the truth of the matter stated. (*People* v. *Johnson* (1973) 32 Cal.App.3d 988, 1001 [109 Cal. Rptr. 118].)

Defendant contends that defense counsel refused to interview defense witnesses prior to their being called to the stand.

▇ Of the seven witnesses called by defense counsel (excluding defendant), at least two indicated that they had little or no conversation with defense counsel prior to trial. We think this is understandable. Defendant's witnesses, her friends, all testified as to her theory of the whole affair and as to her innocence. Knowledgeable defense counsel, after a certain amount of investigation, would realize that this parrot-like testimony would come from all of her witnesses. In any event, there was certainly no loss of a crucial defense. (See *In re Hwamei, supra,* 37 Cal. App.3d at p. 562.)

▇ Defendant contends that her parole officer consented to take her out of jail for one day to prepare her defense, and trial counsel failed to make the necessary arangements. Again, the defendant-petitioner has failed to provide this court with any factual documentation. The parole officer, of course, could not release the defendant on his own behalf since the trial court had refused to release her on her own recognizance. Thus, it is highly speculative that the court would have released her for a day. In any event, there is no showing of a loss of a crucial defense.

Defendant contends that defense counsel failed to object or point out to the court a juror who was asleep during portions of the trial. There is

no record support for this assertion. An affidavit from the prosecutor, under penalty of perjury, denies this.

▮▮▮▮ Defendant contends that her counsel failed to point out the defense of entrapment. As we have previously pointed out, the defense was unavailable.

Defendant contends that her defense counsel failed to confer with her more than 45 minutes from time of arrest to trial. This allegation is lacking in documentation and is otherwise completely unsupported by the record. This is an inadequate showing and defendant has not met her burden of proof. (See *People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)

Defendant makes the other following contentions, all without factual support and all without showing that she was deprived of a crucial defense.

"k. Trial counsel failed to make any opening statement on petitioner's behalf.

"l. Trial counsels [*sic*] argument was of an extremely short durration [*sic*] and very disorganized.

"m. Petitioner is informed and believes trial counsel did not request any instructions on her behalf at the trial.

"n. Trial counsel at one point in a preliminary hearing requested a continuance on behalf of petitioner and asserted grounds he knew to be false.

"o. Due to trial counsel's lack of preparation witnesses called were not effectively questioned or cross examined on petitioner's behalf and the trial was reduced to a farce or sham proceedings. [*Sic*.]

"p. Trial counsel's failure to investigate carefully all defenses of fact and of law which were available to the petitioner resulted in the withdrawal of crucial defenses from the case and petitioner has been denied her Constitutional Right to the effective aid of counsel and of Due Process of the Law.

"q. Trial counsel himself asserts in a letter to petitioner's appellate counsel that he was incompetent in this defense."

▮▮▮▮ The court in *People* v. *Hill, supra,* 70 Cal.2d at page 689, sets forth the law: "It is not enough that defendant alleges omissions of counsel indicating lack of preparation and general incompetence. He must show that such acts or omissions resulted in withdrawal of a crucial defense

from the case." (See also *People* v. *Beagle* (1972) 6 Cal.3d 441, 457 [99 Cal.Rptr. 313, 492 P.2d 1].)

We have examined the record and the petition for writ of habeas corpus filed herein with careful consideration. In our opinion, defense counsel was "able and aggressive, and did what he could with the facts he had to work with." (*People* v. *Ferguson* (1968) 261 Cal.App.2d 807, 810-811 [68 Cal.Rptr. 431].)

The judgment is affirmed. The order to show cause is discharged, and the writ denied.

Richardson, P. J., and Paras, J., concurred.