Tony CONTU, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–495.

Court of Criminal Appeals of Oklahoma.

March 24, 1975.

David W. Phillips, Sand Springs, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Byron L. Wilhite, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Tony Contu, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–73–608, with the offense of Unlawful Delivery of LSD in violation of 63 O.S., § 2–401(B–1). The defendant was found guilty and sentenced to five (5) years in the State penitentiary. From said judgment and sentence a timely appeal has been perfected to this Court.

Robert Boston, a police officer with the City of Tulsa, testified that he was assigned to the Sand Springs Police Department as an undercover agent on the 30th of March, 1973. His duties were to gather information for search warrants, and to make purchases of narcotics. At approximately 7:30 p. m. or earlier, Boston met with two Sand Springs Police Officers, Flanagan and Darland, near 10th and Adams Streets in Sand Springs. Boston met with the other officers to coordinate the plans for the evening and to permit the Sand Springs officers to see what type of automobile he was driving in order to guarantee their proper surveillance.

Officers Darland and Flanagan also introduced Boston to an informant who was to accompany Boston for the purpose of pointing out people whom he knew to be dealers in narcotics. Boston and the informant then proceeded to the location of a convenience store at the above mentioned address. Boston parked in front of the store and the informant pointed out a white over blue 1969 Cougar. Boston left his automobile and approached the driver of the indicated car. The informant remained in Boston's car. Boston then asked the driver of the Cougar if he was Tony Contu, the defendant herein. He said that he was. No one else was present in the defendant's car. Boston then asked if the defendant could get him some acid. The defendant answered that he could get some purple microdots for two dollars a hit and Boston ordered five. The defendant then left in the Cougar and returned a short time later. Boston again got out of his car alone and walked to the defendant's car. The defendant handed Boston a small pink sack in exchange for a ten dollar bill. No one else was in the defendant's car. Boston then left the convenience store in his automobile and turned the pink sack over to Officer Flanagan after he wrote on the sack the time he had taken possession. Boston testified that upon his receipt of the sack it contained five hits of purple microdot acid and a piece of paper with a name written on it. He identified State's Exhibit No. 1 as the pink sack which he had purchased from the defendant.

The next witness was Kenneth Michael Williamson, Ph.D., forensic chemist employed with the Tulsa Police Department. He testified his duties basically consisted of analyzing suspected drugs, blood samples and poisons. As an expert witness, Dr. Williamson testified that on February 1, 1974, he opened the pink sack and by proper chromotography analysis found the contents thereof to be lysergic acid diethylamide or LSD. He stated that he picked up the bag which contained the samples in question from the Tulsa Police Department property room.

Officer Darland of the Sand Springs Police Department then took the stand and testified that on the 30th of March, 1973, he and Officer Flanagan were present with Bob Boston at a park located approximately one half mile from 10th and Adams Streets in the City of Sand Springs. Flanagan gave Boston the money for the purchase while they talked in the park. Boston then left in a 1963 Chevrolet belonging to the Sand Springs Police Department. Flanagan and Darland proceeded separately, following Boston to the Quik-Trip at 10th and Adams. Boston pulled into the convenience store parking lot while Flanagan and Darland pulled into the driveway

of a residence on 10th Street south of the convenience store. From this location both officers observed Boston parked in the lot. A few minutes later the officers observed the Cougar arrive. Boston got out of his car and walked to the defendant's car. The Cougar then left but returned a short time later to the same general location. Only one occupant, the driver, was observed in the vehicle. Darland stated that he then observed the exchange of a light colored sack from the defendant to Boston. The officers and Boston then met back at the park. Officer Boston handed the sack to Darland who handed it to Flanagan. Flanagan then handed it back to Darland after viewing the contents. Darland then observed five purple pills and a prescription receipt from a pharmacy. He stated that the receipt had the name "Mary Contu" on it. Both Flanagan and Darland then signed the pink sack with their initials. Officer Flanagan thereafter took possession of the sack and its contents.

John Stowe testified that he was Chief of Police of the Sand Springs Police Department on the 30th of March, 1973 and that both Darland and Flanagan were on the force at that time. He stated that on the 27th of April near the noon hour, Officer Flanagan gave him an evidence envelope marked "Oklahoma State Bureau of Investigation" which Flanagan had taken from the evidence locker of the Sand Springs Police Department. The witness then left immediately for the Crime Bureau in Oklahoma City with the evidence. Upon his arrival, he placed the evidence in the proper locker and secured it. He then returned to Sand Springs. On the 31st of January, 1974, he returned to the Crime Bureau with two persons from the Tulsa County District Attorney's Office. The three men met with the Director of the Laboratory. The evidence was then removed from the locker and placed in the custody of one of the representatives from the District Attorney's Office, Stephen Clark.

George Kennedy, Chief of Technical Services Division of the Oklahoma State Bureau of Investigation, stated that the lockers in which the evidence is kept has a rear door opening directly into the laboratory. The chemist opens this door, removes the evidence and opens the envelope from the bottom. He then analyzes the contents and makes his report. The evidence is then resealed into the envelope and initialed by the chemist who thereafter locks it back in the case from which it came. Kennedy stated that Richard Hynes, a certified forensic chemist, had been assigned to work on analysis of evidence from Tulsa County. The evidence in this case was placed in the locker out of which Hynes had worked. His initials appeared on the envelope but Hynes was no longer employed by the Oklahoma State Bureau of Investigation, having secured employment some place in Texas. Kennedy stated that upon his removal of the evidence from Hynes' locker he turned it over to Stephen Clark of the Tulsa District Attorney's Office.

Stephen Clark then testified that he took possession of the evidence on January 31, 1974 at the Oklahoma State Bureau of Investigation and, after viewing the contents, had the envelope so marked at that time and at that place. He personally delivered the envelope to the Tulsa Police Department property room. The items of evidence viewed at the Oklahoma State Bureau of Investigation on that date were the same items present in the court room.

Officer Flanagan of the Sand Springs Police Department testified substantially the same as Officer Darland. He stated that after placing the evidence into the evidence locker in the Chief's office, there was a 27 day lapse before the items were removed and taken to the Oklahoma State Bureau of Investigation. This was to allow more items to accumulate as a result of Bob Boston's further purchases during that time period.

Thereupon the State offered its Exhibits Nos. 1 through 6 into evidence. The defense objected to Exhibit No. 1, the pink sack and contents, stating that the State had failed to show continuous possession

of the contents. Further objection was made to Exhibit No. 5, the prescription receipt, as being irrelevant. Both objections were overruled.

The first witness for the defendant, Rick Boyd, testified that he was with the defendant on the 30th of March, 1973. The defendant had picked him up from work at 6:00 p. m. and they had gone driving around Sand Springs as was their custom. They stopped at the Quik-Trip convenience store and a person who was known as Larry Pate to the defendant approached their car. This individual spoke to the defendant but the conversation was not heard by the witness. Boyd and the defendant then went to Boyd's grandmother's house nearby and later returned to the convenience store. At that time Larry Pate and another person approached the defendant's car. Pate spoke to the defendant but Boyd saw no exchange between the two.

Richard Enks then testified on behalf of the defendant's character. Tony Contu, the defendant, then took the stand. He stated that on the 30th of March, 1973, at 6:00 p. m. he and Rick Boyd were driving around Sand Springs. They stopped at the convenience store at 10th and Adams and Larry Pate approached the vehicle and asked the defendant if he had any acid for sale. The defendant said that he did not. Boyd and the defendant then left the store and went to Boyd's grandmother's house which was nearby. They stayed there briefly and returned to the store. Pate came over to the car again and asked if the defendant had any acid for sale. The defendant again stated that he did not. A man with a beard got out of a nearby car and talked to Rick Boyd but the conversation was not heard by the defendant who was speaking with Pate.

The defendant first alleges that the trial court erred by introducing State's Exhibit No. 1, the sack and the purple microdots contained therein, into evidence without the State's showing a complete and proper chain of custody, due to the State's failure to call a chemist from the Oklahoma State Bureau of Investigation to testify at the trial. We disagree. While it is true that the testimony of the Oklahoma State Bureau of Investigation chemist would have perfected the chain of possession, the lack of the testimony is not fatal to the introduction of the evidence. The testimony of the chemist is not vital merely because he handled the evidence in view of the fact that the State caused the exhibit to be analyzed by a forensic chemist in Tulsa who did testify at trial concerning the properties of the pills in question. Officer Boston identified at trial Exhibit No. 1 as being the same as that purchased. The protection afforded the defendant by the chain of possession is to insure that between the time the evidence is found and the time it is analyzed there has been no substitution or tampering. See People v. Riser, 47 Cal.2d 566, 305 P.2d 1, 10 (1956). The State is not under the burden of negating absolutely any and all possibility of tampering or substitution while the evidence is in the custody and control of a law enforcement agency. By virtue of the fact that the chemist was an employee of the Oklahoma State Bureau of Investigation and consequently working daily within the confines of a State institution devoted to the handling and processing of materials which are the objects of pending criminal prosecutions, the standard care in constant use would negate all but a mere conjecture that the material in possession was substituted or altered. We further note that where there is the barest speculation that tampering could have occurred it is proper to admit the evidence and let what doubt there may be go to its weight rather than render the evidence completely inadmissible. See, Trantham v. State, Okl.Cr., 508 P.2d 1104 (1973). We conclude that in viewing the evidence of the chain of custody only the barest speculation would permit us to conclude that tampering with the evidence did occur. The evidence submitted in support of the chain of custody is sufficient to render State's Exhibit No. 1 admissible. Consequently, although all persons who handled State's Exhibit No. 1 were not called as witnesses, the chain of possession was nevertheless substantially established

and the proof adequate to sustain the foundation for admissibility. See, Racy v. State, Okl.Cr., 520 P.2d 375 (1974).

█ The defense's second and final proposition of error is that the trial court should not have allowed State's Exhibit No. 5, a pharmacy receipt bearing the name "Mary Contu," to be admitted into evidence as it had no relation to the case and was of no probative value. The defense failed to cite any authority to support his contention. This Court has repeatedly stated that the citation of authority for arguments before the Court on appeal is necessary. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion that the trial court has erred. See, Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969).

For all the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BRETT, P. J., concurs in results.

BLISS, J., concurs.