**Eddie Gene MILLER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–764.**

Court of Criminal Appeals of Oklahoma.

May 19, 1977.

Rehearing Denied Aug. 12, 1977.

George A. Farrar, Covington, Farrar & Poe, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., James W. McCann, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Eddie Gene Miller, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Craig County, Oklahoma, Case No. CR–75–191–F, of the crime of Possession of Marihuana, Second Offense, in violation of 63 O.S.1971, § 2–402, ¶ B 2. Pursuant to the jury verdict, defendant was sentenced to three (3) years in the State penitentiary, two (2) years of which were suspended on April 7, 1976. From said judgment and sentence, the defendant has perfected this timely appeal.

The first witness for the State was Willie R. D. Morrison, Police Officer for the City of Vinita. He testified that he was on duty on April 19, 1975, when he was dispatched to the south side of the Office Bar at approximately 5:30 p. m. The witness identified the defendant as the occupant of the back seat of a car parked in the parking lot. The witness further testified that Officer Anderson, another police officer in a second car, arrived at the scene just ahead of the witness, but both approached the car at the same time. Both the defendant and another person, later identified as Steve Boone, appeared to be asleep or passed out, according to Officer Morrison. The officers attempted to waken the defendant, who struggled briefly. At this point the defendant appeared to be intoxicated according to this witness. The witness testified that after the defendant was removed from the car he attempted to flee. Officer Morrison then noticed that the defendant had a baggie in his hand which he attempted to throw away, but Officer Anderson grabbed the defendant's arm and the baggie fell to the ground. Officer Anderson retrieved the bag and gave it to Officer Morrison, who put it in an envelope. The witness turned the envelope containing the baggie over to the District Attorney's Office. The witness then opened the envelope and identified the baggie as appearing to be the one originally placed in the envelope.

On cross-examination, the witness testified that the dispatcher told the officers to check out two possible drunks in a parking lot by the Office Bar. He also testified that after he had confiscated the baggie he tried, unsuccessfully, to initial it with an ink pen. The defendant was placed under arrest on public drunk charges.

On redirect examination, Officer Morrison testified that the only thing different about the envelope from the time he had originally sealed it, until trial, was that the bottom of the envelope was unsealed, having been cut open for the preliminary hearing.

The State called as its second witness, Ann Williams, a secretary in the District Attorney's Office. She testified that she received the envelope, identified as State's Exhibit No. 1, from Officer Morrison. She stated that the seal on the envelope was still intact when she first received it. The witness placed the envelope in the safe, and it remained there until given to Floyd Moss to take to the Tulsa Police Department Crime Lab. Ms. Williams testified that the envelope was returned by Officer Brewer and the only difference in the envelope then was that it had been opened and resealed at one end. The witness testified that she then placed the envelope back in the safe where it remained until the trial.

The State then called Carroll Jackson, Criminal Justice Planner for NECO. He testified that he received State's Exhibit No. 1 from Floyd Moss and that he proceeded directly to the Tulsa Crime Lab with it. The witness also testified that the envelope was sealed when he received it and when he delivered it and that there were no apparent openings.

The State then called John Brewer, a Deputy Sheriff for Craig County. The witness identified State's Exhibit No. 1 as the envelope which he picked up from Ms. Williams. He testified that there was only one opening when he picked up the envelope. He delivered the envelope to Ms. Williams at the District Attorney's Office.

The parties then stipulated that if Floyd Moss were called to testify, he would state that he received the envelope from Ms.

Williams, and that he gave the sealed envelope to Carroll Jackson to take to Tulsa.

The last witness called by the State was Ken Williamson, a forensic chemist with the Tulsa Police Department. He identified State's Exhibit No. 1 as the envelope which contained the contents which he had examined on May 23, 1975. The witness testified that the envelope was sealed when he received it and that he cut the top off, removed the contents and examined them, resealed the envelope, initialed and dated it. He next identified State's Exhibit No. 2 as the plastic bag which had been inside the envelope. The chemist's analysis revealed the bag to contain marihuana. Following this testimony the State rested.

The defendant then moved to strike the jury panel, for a directed verdict, for a mistrial, and demurred to the evidence. All motions were overruled.

The defendant's first witness was Steve Boone, a student at Oklahoma State Tech. He testified that he was with the defendant on April 19, 1975, when he, the defendant and a couple of friends decided to go "partying" at approximately 11:30 a. m. The witness testified that they bought a quart of whiskey and that he and the defendant drank the entire quart in about 40 minutes. At about 1:00 p. m. they bought another bottle of whiskey and drove to the lake. The witness testified that he remembered little past 1:30 p. m. and that from 2:00 p. m. he did not know where the defendant was or what he was doing.

The defendant then took the stand and testified that he was a truck driver for Squaw Transport. He admitted that he had been previously convicted on a possession charge in 1972. His testimony as to the events on the day in question after 11:30 p. m. was substantially the same as Steve Boone's testimony. The defendant did testify that he remembered, vaguely, returning from the lake and crawling into Boone's Volkswagen. He also testified that he was so drunk that he could hardly stand up. Finally, the defendant testified that upon being awakened by the police officer he did not know that he had a baggie of marihuana in his hand.

The last witness for the defense was Bruce Evans, a good friend of the defendant. He testified that he saw the defendant at the Office Bar on April 19, 1975, in the late afternoon and that defendant was so drunk that he could hardly play foosball. The witness testified that he helped the defendant into Boone's car. He later went out to check on the defendant and saw the officers looking into the car. Evans saw the defendant struggle with the officers, and that as a result of this struggle defendant fell to the ground. Evans stated that there was only one police car on the scene at the time he observed this altercation. Lastly, he testified that it was possible that the defendant had something in his hand and that he just did not notice it. After this witness' testimony the defense rested.

As a rebuttal witness, the State recalled Officer Morrison, who testified, that there were two police cars at the arrest scene. Further, he testified that both cars were in the proximity to the car in which the defendant was found. Both sides then rested.

As his first assignment of error, the defendant contends that the trial court erred in admitting into evidence State's Exhibit No. 2, the baggie of marihuana. The defendant asserts that the chain of possession of the exhibit was not properly established. This assignment of error is totally without merit.

It is a well established rule of law that the party offering demonstrative evidence must show, to the satisfaction of the trial court, that the circumstances of its custody provide reasonable certainty that there has been no alteration of, or tampering with the evidence. However, this burden is not so strict that all possibility of alteration, no matter how slight, must be negated by the party offering such evidence. See, *Contu v. State*, Okl.Cr., 533 P.2d 1000 (1975). In *Contu*, this Court stated at page 1003:

"[W]here there is the barest speculation that tampering could have occurred it is proper to admit the evidence and let what

doubt there may be go to its weight rather than render the evidence completely inadmissible. . . ." (Citations omitted)

Also see, *Trantham v. State*, Okl.Cr., 508 P.2d 1104 (1973). We conclude that in viewing the evidence of the chain of custody only resorting to speculation would permit us to conclude that the evidence was altered or tampered with. This evidence was properly admitted upon proper predicate, and what doubt there may be should go to its weight.

▆ As defendant's second assignment of error, he asserts that the trial court erred in giving instruction No. 1. Defendant claims that by adding the words "to your satisfaction" to the instruction, the trial court was attempting to define "reasonable doubt." The pertinent part of the instruction reads as follows:

"THE DEFENDANT IS PRESUMED TO BE INNOCENT OF THE CRIME CHARGED AGAINST HIM, AND INNOCENT OF EACH AND EVERY MATERIAL ELEMENT CONSTITUTING SUCH OFFENSE, AND THIS PRESUMPTION OF INNOCENCE CONTINUES UNTIL SUCH TIME AS HIS GUILT IS SHOWN *TO YOUR SATISFACTION BEYOND A REASONABLE DOUBT*, AND IF UPON A CONSIDERATION OF ALL THE EVIDENCE, FACTS AND CIRCUMSTANCES IN THE CASE YOU ENTERTAIN A REASONABLE DOUBT OF THE GUILT OF THE DEFENDANT OF THE CRIME CHARGED AGAINST HIM, YOU MUST GIVE HIM THE BENEFIT OF THAT DOUBT AND RETURN A VERDICT OF NOT GUILTY." (Emphasis added).

This Court has repeatedly held that an attempt to define "reasonable doubt" to a jury by the trial judge is reversible error. See, *Jones v. State*, Okl.Cr., 554 P.2d 830 (1976); *Fellows v. State*, Okl.Cr., 508 P.2d 1089 (1973); *Templer v. State*, Okl.Cr., 494 P.2d 667 (1972); and, *Wilson v. State*, Okl. Cr., 403 P.2d 262 (1965). However, the instant case is distinguishable on the facts. In these earlier cases, this Court struck down long, and many times confusing definitions of "reasonable doubt," while in the instant case the trial judge merely verbalized that which was obvious. By implication, "proof beyond a reasonable doubt" *must* be proven to each juror "to their satisfaction," otherwise the jurors would return a not guilty verdict. We are of the opinion that adding the words "to your satisfaction" was not an attempt to define "reasonable doubt." Therefore, this assignment of error is without merit.

Finally, the defendant asserts that the verdict is contrary to and not supported by the evidence. As the basis for this argument, defendant argues that he was so intoxicated at the time of the alleged offense he was unable to form the intent to commit the crime.

▆ By statute voluntary intoxication is no defense to criminal culpability. Title 21 O.S.1971, § 153. However, this Court has recognized a caveat in this statutory authority in the case of *Phillips v. State*, Okl.Cr., 321 P.2d 724 (1958), wherein we stated that intoxication would not excuse or mitigate crime unless accused had been so intoxicated that his mental powers had been overcome and it had therefore been impossible for him to form criminal intent. This question of intoxication to the point where the accused is unable to form the requisite intent is a question for the jury on proper instructions from the bench. See generally, *Copperfield v. State*, 37 Okl.Cr. 11, 255 P. 590 (1927) and *Derrisaw v. State*, 29 Okl.Cr. 377, 234 P. 230 (1925). In the case at bar the jury was given instruction No. 3, which stated:

"NO ACT COMMITTED BY A PERSON WHILE IN A STATE OF VOLUNTARY INTOXICATION SHALL BE DEEMED LESS CRIMINAL BY REASON OF HIS HAVING BEEN IN SUCH CONDITION. "HOWEVER, IF THE ACCUSED WAS IN SUCH A STATE OF INTOXICATION AS TO RENDER HIS MIND INCAPABLE OF FORMING THE SPECIFIC INTENT ESSENTIAL TO THE OFFENSE, HE SHOULD BE FOUND NOT GUILTY."

Being properly instructed on this issue, the jury weighed the evidence and found against the defendant.

 It has continually been the position of this Court that where there is competent evidence in the record from which the jury can reasonably conclude the defendant guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is sharp conflict in the evidence and different inferences may be drawn therefrom, as it is the exclusive province of the jury to weigh the evidence and determine the facts. See, *Shelton v. State*, Okl.Cr., 554 P.2d 1380 (1976). On extensive review of the facts, we conclude that there was sufficient competent evidence from which the jury could reasonably conclude the defendant guilty as charged. This assignment of error is without merit.

For the aforementioned reasons, this Court is of the opinion that the decision of the trial court must be *AFFIRMED*.

BUSSEY, P. J., and BRETT, J., concur.