James BLADES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–677.

Court of Criminal Appeals of Oklahoma.

Dec. 10, 1979.

As Corrected Jan. 3, 1980.

Rehearing Denied Jan. 10, 1980.

Certiorari Denied Oct. 6, 1980.

See 101 S.Ct. 129.

Richard Otto Burst, Sr., Guthrie, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., Timothy S. Frets, Legal Intern., for appellee.

OPINION

CORNISH, Presiding Judge:

The appellant, James Blades, was convicted in the District Court, Okmulgee County, Oklahoma, with the offense of Unlawful Delivery of LSD. Punishment was set at twenty (20) years' imprisonment and a fine of Five Thousand Dollars ($5,000.00).

The evidence showed that on March 4, 1973, Dennis Dill, a paid informant for the Oklahoma State Bureau of Investigation, went to a drive–in in Henryetta, where he was approached by the appellant to purchase some mescaline. Dill indicated he would have to get some money. He drove to the home of OSBI agent Jack Lay, with whom Dill had worked on various drug investigations. Lay conducted a search of Dill and his car and then gave Dill the money necessary for the purchase.

Followed in a separate car by agent Lay and Officer Paul Clark, Dill returned to the drive–in and parked his car. He and the appellant entered another automobile where the appellant gave Dill two pink capsules in exchange for four one dollar bills. Dill placed the capsules in the wrapper of an empty Kool cigarette package. Agent Lay was parked about half a block away but was unable to observe the actual transaction.

Dill then drove to Lay's house, followed by Lay and Clark, where he gave Lay the cigarette package containing the two capsules. Again, agent Lay conducted a search of Dill and his car. Thereafter, both Dill and Lay initialed the cigarette package, and the evidence was placed in the trunk of Lay's automobile, where it remained until it was delivered to the OSBI crime lab in Oklahoma City. Upon analysis at the crime lab, it was determined that the capsules contained LSD.

## I

■ The appellant first alleges that he was denied his constitutional right to a speedy trial. In *Bauhaus v. State*, Okl.Cr., 532 P.2d 434 (1975), this Court dealt with the right to a speedy trial, citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We adopted a balancing test when determining whether a defendant has been deprived of this right. Among the factors to be considered are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant arising out of the delay.

■ Applying the criteria of *Barker* to the facts of this case, we must first consider the length of delay: two years and nine months. There is no doubt that a delay of such length is substantial enough to constitute a deprivation of a right to a speedy trial if analysis of the other factors shows that such a delay was unwarranted. See *State v. Durham*, Okl.Cr., 545 P.2d 805 (1976). With respect to the length of delay, the United States Supreme Court in *Barker* stated:

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." (Footnote omitted, 407 U.S. at 530, 92 S.Ct. at 2192)

In this case, the record reveals that the delay from the initial filing of the information on May 13, 1973, to dismissal on January 24, 1974, was not due to any bad faith on the part of the prosecution. Nor is there any indication that the delay was due to any deliberate attempt by the prosecution to hamper the defense. The reasons for the delay were the State's inability to procure the testimony of a chemist and the failure of informant Dennis Dill to respond on three occasions to subpoenas.

Following dismissal, the case was refiled on January 29, 1974. A timely preliminary hearing was held on March 20, 1974, and trial was set for September 15, 1975. There is no explanation in the record to account for the gap in time between the preliminary hearing and the trial date. However, we find it significant that the appellant, who was out on bond, made no assertion of his

right to a speedy trial. As stated in *Barker*, "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

The delay from September 15, 1975, to January 26, 1976, was due to the appellant's motion on September 5, 1975, to continue the trial to the next term of court. In *Barker* the Supreme Court emphasized that the right to a speedy trial may be affirmatively waived, stating, "We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside."

We note that the appellant asserted his right to a speedy trial on only one occasion, that being when he objected to the State's motion for continuance granted on September 19, 1973. At all other times the appellant either acquiesced in the delay or was himself responsible for the delay. Under these circumstances, we find that this factor weighs heavily against the appellant.

The fourth factor in the balancing test is prejudice to the accused. As stated by the Supreme Court in *Barker*:

"... Prejudice, of course, should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration, (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past...." (Footnote omitted, 407 U.S. at 532, 92 S.Ct. at 2193.)

Here, the appellant was free on bond, therefore, there was no oppressive pretrial incarceration. Although he may have suffered some anxiety during the delay, it was not of such a degree as to cause him to assert his right to a speedy trial. Finally, there is no assertion that the defense was hampered or prejudiced in any way. This is not a case where witnesses died, became unavailable or were unable to remember the pertinent facts. The only witness called for the defense was the appellant himself, and his defense was a denial of the drug sale. The record does not indicate that the appellant was unable to recall the facts surrounding the transaction. Based on the foregoing, it is highly speculative that the delay hampered the defense. We hold the appellant was not denied the right to a speedy trial.

## II

Introduction of evidence of other crimes over appellant's objections is next alleged as error. Specifically, the transcript reflects that in response to questions by the prosecutor, informant Dennis Dill stated that he had purchased other pink capsules from the appellant on two prior occasions. This testimony was admitted on the theory that it showed a common scheme or plan.

■ Mere similarity of crimes is not enough to admit evidence of other crimes. In *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977), we stated:

"The State would try to bring the evidence in question in this case under the fifth exception stated above, that is, common scheme or plan. However, this Court cannot agree. A common scheme or plan contemplates some relationship or connection between the crimes in question.... The word, 'common' implies that although there may be various crimes, all said crimes must come under one plan or scheme whereby the facts of one crime tend to establish the other such as where the commission of one crime depends upon or facilitates the commission of the other crime, or where each crime is merely a part of a greater overall plan. In such event, the crimes become connected or related transactions, and proof of one becomes relevant in proving the other. However, evidence of other

offenses should never be admitted under this exception when it shows that the accused committed crimes wholly independent of that charged." (Citations omitted)

Subsequently, in *Oliver v. State*, Okl.Cr., 568 P.2d 1327 (1977), we applied this language in a narcotics case with facts similar to the present case.

■ We find the prior drug sales were independent from the crime charged here and their admissibility was error. However, due to the overwhelming evidence of guilt, admission of this evidence could not have contributed to the finding of guilt, but is grounds for modification of the judgment and sentence.

### III

■ Next complained of on appeal are several comments made by the prosecutor during closing argument. The appellant argues the trial court erred in permitting the prosecutor, over objection, to define reasonable doubt by way of an example. The comments complained of are as follows:

"Now, what does this 'beyond a reasonable doubt' mean? We don't know. But you told Mr. Hutton, each of you did, that you wouldn't require the State to prove its case any stronger than beyond a reasonable doubt.

"Well, I can't give you a legal definition of a reasonable doubt because there isn't any, and the higher courts would reverse this case, if it was a conviction, if I tried to. But I can point out to you an example.

"I have a little four year old boy and you have got a cookie jar up here on the counter and you tell him not to get in the cookies. It's been raining and he comes in and here he's pulled the chair up and there's his little muddy footprints on the chair and the muddy footprints up where the cookies are and the cookies are gone and you catch him in the other room with mud on his feet and crumbs on his face. You know beyond any doubt that he did it.

"MR. BINGMAN: Your Honor, I'm going to object to his definition of reasonable doubt.

"THE COURT: All right. Overruled.

"MR. BINGMAN: May I have my exception, please?

"THE COURT: Ladies and Gentlemen, don't pay any attention to any of the argument that's not a reasonable conclusion of the testimony.

"MR. WEBB: But you know in your mind that he's the one that got the cookies. By the same token, we know in our mind and think you're convinced from this solid, flat point–blank testimony that's in evidence, that this Defendant is guilty as charged and we ask–the penalty now, it is severe, and you told us that you wouldn't let that bother you and that you wouldn't use any sympathy or prejudice."

In support of his argument, the appellant cites *Gresham v. State*, Okl.Cr., 396 P.2d 374 (1964), wherein this Court stated:

"We are of the opinion and accordingly hold that it is error for the County Attorney to define or attempt to define 'reasonable doubt' when the Court has failed to define the same in its instructions; it is prejudicial error for the County Attorney to mis–state the definition of 'reasonable doubt' in his argument to the jury and when, as in the instant case, there are other improper remarks made during the closing argument, prejudicial to the accused, this Court will reverse and remand the cause for a new trial."

This case is distinguishable from *Gresham* because we there held that the prosecutor grossly and incorrectly defined reasonable doubt. In this case, while it was error to define reasonable doubt by way of an example, the error did not violate a substantial right of the appellant in light of the admonition given by the trial court and the overwhelming evidence of guilt. See *Jones v. State*, Okl.Cr., 554 P.2d 830 (1976), and *Lauhoff v. State*, Okl.Cr., 508 P.2d 285 (1973).

■ The appellant also complains of several other remarks made by the prosecutor during closing argument. An examination

of the transcript reveals no objection to the comments complained of by defense counsel. In *Marshall v. State*, Okl.Cr., 551 P.2d 291 (1976), we held that when an objectionable statement is made by the prosecuting attorney it should be called to the attention of the trial court by timely objection, together with a request that the jury be instructed to disregard the improper statement. In the instant case, because defense counsel failed to object to the comments complained of, error, if any, was waived.

IV

The appellant alleges the trial court erred when it allowed the introduction into evidence of the two capsules containing LSD, because, first, the State affirmatively established the possibility of commingling of the evidence and, second, there was a break in the chain of custody.

■ Concerning the possibility of commingling, the appellant relies on the testimony of agent Lay, which in pertinent part reads:

"Q. Okay. Now, what did you do with them then, Agent Lay?

"A. They were placed in the trunk of my vehicle, along with a lot of other evidence that I had at that time, and I kept them until June the 25th and turned them in at the Laboratory in Oklahoma City."

A further examination of Lay's testimony reveals that the capsules were contained in an empty Kool Cigarette package at the time they were placed in the trunk of Lay's car. Also, Lay and Dill initialed and dated the package prior to placing it in the trunk, and both identified the same at trial. Under these circumstances, we are of the opinion that commingling of the evidence was highly improbable.

■ In the second part of his argument, the appellant complains of the 114 day gap between the time evidence was obtained and the time it was received at the State Crime Laboratory. At the outset, we note that lapse of time is not prejudicial per se and doubt arises only if the passage of time is unexplained or suspicious. See *At-*

*kins v. State*, Okl.Cr., 572 P.2d 1298 (1977). In support of his argument, the appellant cites *Faulkenberry v. State*, Okl.Cr., 551 P.2d 271 (1976), but the facts there were essentially different. In that case there was an unexplained time lapse of ten days before delivery to the State Crime Lab, no showing as to where the evidence was during the period, and no testimony as to how the evidence arrived at the crime lab. In this case, there is no unexplained gap, it is clear the evidence was located in the trunk of agent Lay's car, and there is direct evidence that agent Lay personally delivered the substance to the laboratory.

■ The appellant further contends there was no showing of who besides agent Lay had access to the trunk. To this contention we need only set forth the well established rule that the party offering demonstrative evidence must show to the satisfaction of the trial court that the circumstances of its custody provide reasonable certainty that there has been no alteration or tampering with the evidence. However, this burden is not so strict that all possibility of alteration, no matter how slight, must be negated by the party offering such evidence. See *Miller v. State*, Okl.Cr., 567 P.2d 105 (1977).

■ We are of the opinion that there was sufficient evidence of the chain of custody to justify the court's admitting the evidence for the jury's consideration. Where there is any speculation that tampering or commingling could have occurred it is proper to admit the evidence and let what doubt there may be go to the weight rather than render the evidence completely inadmissible. *Contu v. State*, Okl.Cr., 533 P.2d 1000 (1975).

V

■ Denial of his right to counsel at the preliminary hearing is also alleged as error. The record reveals that this case was called for preliminary hearing three times: September 19, 1973; December 19, 1973; and January 24, 1974. On June 27, 1973, the appellant appeared before the court without

counsel and was advised of his right to have counsel present and, if indigent, counsel could be appointed. The court at that time made a determination that the appellant was not indigent. Thereafter, on September 19, 1973, the case came on for preliminary hearing and the appellant appeared without counsel. Again the court determined the appellant was not indigent. The hearing was then continued over the appellant's objection to December 19, 1973.

When the case came on for hearing on December 19, 1973, the appellant was represented by retained counsel. Due to the absence of the State's witnesses, the prosecutor and defense counsel joined in asking for a continuance on that date. Subsequently, on January 24, 1974, the case again came on for preliminary hearing, at which time the appellant appeared without counsel. The State announced it was not ready to proceed due to the absence of Dennis Dill, and the court dismissed the case. An examination of the record reveals the reason appellant appeared without counsel at this hearing was due to the fact that he and his retained counsel could not agree on the amount of attorney's fees.

Subsequently, on January 29, 1974, the case was refiled. On March 20, 1974, the case came on for preliminary hearing and the appellant appeared without counsel. The court conducted a hearing regarding the appellant's appearance without counsel. The court determined the appellant was not indigent and that he knowingly and voluntarily waived his right to counsel. Thereafter, on June 20, 1974, the appellant submitted an application for court appointed counsel. In his supporting affidavit, the appellant informed the court that his full-time employment had terminated. Based on the appellant's changed circumstances, the court appointed him an attorney. Thereafter, the appellant was represented by counsel at his arraignment and trial.

Based on the foregoing facts, we are of the opinion the appellant was not denied his right to counsel and, accordingly, we find no merit to his argument.

## VI

Finally, the appellant contends the magistrate erred in allowing the refiling of this case after it was dismissed on January 24, 1974. Dispositive of this allegation is *State v. Robinson*, Okl.Cr., 544 P.2d 545 (1975), where we stated:

"In conclusion, we observe that since the trial court dismissed the criminal proceedings as authorized by 22 O.S.1971, § 815, the State may reinstate the prosecution under the authority of 22 O.S.1971, § 817 (unless the filing of the information is barred by the statute of limitations). . . . "

See also *Lampe v. State*, Okl.Cr., 540 P.2d 590 (1975); and *Ex parte Thornton*, 97 Okl.Cr. 266, 262 P.2d 176 (1953). While the appellant claims that Section 815 is inapplicable because the dismissal in the present case was by the magistrate, we hold Section 815, when read in the full context of its chapter (21 O.S., ch. 11), refers to magistrates as well as trial courts.

Insofar as the appellant may have been prejudiced by the evidence of other crimes, the sentence of twenty (20) years and the Five Thousand Dollar ($5,000.00) fine is hereby *MODIFIED* to a term of ten (10) years and a fine of Two Thousand Five Hundred Dollars ($2,500.00), and as modified the judgment and sentence as *AFFIRMED*.

BRETT and BUSSEY, JJ., concur.