**Glendal Ray LUNA, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–88–427.

Court of Criminal Appeals of Oklahoma.

April 8, 1992.

Cindy G. Brown, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

Glendal Ray Luna, appellant, was tried by jury for the crime of Delivery of a Controlled Dangerous Substance (methamphetamine), in violation of Section 2–402 of Title 63 of the Oklahoma Statutes in Case No. CRF–86–176 in the District Court of Pittsburgh County before the Honorable Robert A. Layden, District Judge. The jury returned a verdict of guilty and set punishment at eight (8) years imprisonment and a five thousand ($5,000) dollar fine. The Judgment and Sentence form shows the trial court sentenced appellant according to the jury's verdict. From this Judgment and Sentence, appellant now appeals.

On March 21, 1986, while working with the McAlester Police Department, Irene Price, an informant, attempted to buy narcotics from appellant. Price was searched, equipped with an electronic transmission device, and given sixty dollars with which to make the purchase. Officer Hass dropped her off at a prearranged spot and watched her until she walked under a railroad overpass and out of sight. Another officer, Bill Poston, then watched her emerge from under the overpass and go into J & J Cycle Shop, a business run by appellant. While in the shop, Price was out of the officers' sight, but they continued to monitor her through the transmission device. They heard the informant speaking to appellant, but they did not hear any reference to the drug transaction at issue. They did, however, hear a conversation about previous drug transactions involving the appellant. After about five minutes, the informant left appellant's shop and returned to Officer Hass's car. She handed the officer a substance later determined to be methamphetamine.

### I.

Appellant's first proposition is that the State violated his constitutional right to due process and a fair trial. This allegedly occurred when two of the State's witnesses introduced evidence violative of the trial court's ruling on appellant's motion in limine barring introduction of other crimes evidence in the State's case-in-chief. The evidence in question is two fold. First is testimony of prior drug sales appellant made to Irene Price, the State's informant. Second is a conversation between Price and appellant concerning drug sales appellant made behind the walls of the Oklahoma State Penitentiary.

On direct examination, the prosecutor asked Officer Poston, "What did the conversation [between Price and appellant] concern?", to which Poston replied, "It concerned narcotics dealing." This evidence was clearly given in violation of the trial court's ruling, yet defense counsel did not object when the statement was made. Instead, the defense allowed the State to finish the direct examination of Poston by asking him more than a dozen additional questions. Defense counsel then began cross examination. It was not until he had asked the officer eight questions that he moved to strike the previous testimony of narcotics dealings, and moved for admonishment and mistrial.

■ This Court has held that a ruling on a motion in limine is merely advisory and not conclusive, and that to properly preserve objections to the introduction of evidence that is the subject of the motion in limine, a timely objection must be made when the evidence is sought to be introduced. *Teegarden v. State*, 563 P.2d 660, 662 (Okl.Cr.1977). *See also Johnson v. State*, 761 P.2d 884 (Okl.Cr.1988); *Davis v. State*, 665 P.2d 1186, 1197 (Okl.Cr.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983).

■ A timely objection is one made as soon as the applicability of the objection is, or reasonably should be known to counsel. *Woods v. State*, 762 P.2d 987 (Okl.Cr.1988). In *Thompson v. State*, 518 P.2d 1119, 1121 (Okl.Cr.1974), we held the appellant did not make a timely objection to an officer's testimony implicating him in other crimes when he waited until the conclusion of the direct examination before voicing an objection. The court there quoted *Campbell v. State*, 462 P.2d 349, where Judge Brett said, "[i]t comes too late to enter an objec-

tion, after the witness had completely unfolded his testimony and then attempt to prevent the jury from considering the same, as was done in this case." *Id.* The barn door was opened by counsel's failure to object, he can't ask the court to close it at an improper time.

Additionally, we note appellant cannot change this result by characterizing the officer's testimony as an evidentiary harpoon. Failure to make a timely objection at trial to an evidentiary harpoon waives consideration on appeal. *Robinson v. State,* 743 P.2d 1088, 1092 (Okl.Cr.1987).

More troublesome is the testimony of informant Irene Price. Despite warnings from the trial court and timely objection by defense counsel, she repeatedly interjected evidence of other crimes with testimony of previous drug transactions she engaged in with appellant. The State argues Price's testimony did not result in error because it showed a common scheme or plan. We rejected a similar contention in *Blades v. State,* 619 P.2d 875 (Okl.Cr. 1979), cert. denied, 449 U.S. 845, 101 S.Ct. 129, 66 L.Ed.2d 54 (1980). In that case, an officer acting undercover testified that he had purchased narcotics from the appellant on two prior occasions. We held admission of the testimony was improper, stating:

> The State would try to bring the evidence in question in this case under the fifth exception stated above, that is, common scheme or plan. However, this Court cannot agree. A common scheme or plan contemplates some relationship or connection between the crimes in question.... The word, "common" implies that although there may be various crimes, all said crimes must come under one plan or scheme whereby the facts of one crime tend to establish the other such as where the commission of one crime depends upon or facilitates the commission of the other crime, or where each crime is merely a part of a greater overall plan. In such event, the crimes become connected or related transactions, and proof of one becomes relevant in proving the other. However, evidence of other offenses should never be admit-

ted under this exception when it shows that the accused committed crimes wholly independent of that charged. (Citations omitted).

*Blades,* 619 P.2d at 878–79. We find the prior drug sales were independent of the one tried in the case at bar and their admission was error. *Id.* However, due to the overwhelming evidence of guilt, admission of the evidence of prior drug sales could not have contributed to the finding of guilt, but is grounds for modification of the sentence. *Jones v. State,* 723 P.2d 984, 986 (Okl.Cr.1986); *Blades v. State,* 619 P.2d at 879. Accordingly, we modify the term of imprisonment from eight (8) years to five (5) years. The appellant is to be found guilty on the facts in this case and not based upon other crimes.

## II.

Appellant's second proposition is that the procedures used to obtain the evidence against him violated his constitutional guarantees to due process of law. He does not claim entrapment, as traditionally understood, but instead asserts that the manner in which the police conducted the controlled buy was so inherently untrustworthy that it violated fundamental principles of fairness and due process. In support of this idea appellant directs us to *State v. Anders,* 560 So.2d 288 (Fla.App. 4 Dist.1990). This case relies on dicta contained in *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), which reads in part:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, ... the instant case is distinctly not of that breed.

*Russell,* 411 U.S. at 431–2, 93 S.Ct. at 1642. In *Anders,* the Florida District Court of Appeal ruled that, under the specific circumstances of the case, the use of an informant to set up a drug transaction with the defendant violated due process. There, the informant participated in the operation to

avoid a minimum mandatory prison term. There was no evidence that either of the defendants had previously sold drugs. In essence, the informant created a crime where there had been none previously.

In *United States v. Allen*, 513 F.Supp. 547 (W.D.Okl.1981), the District Court of the Western District of Oklahoma addressed the same claim of outrageous conduct violative of appellant's due process. The court concluded that since there was no evidence presented of coercion, the officer's conduct was not so outrageous as to bar prosecution. *Allen*, 513 F.Supp. at 547. In the case at bar, appellant has presented no evidence suggesting that he was coerced, entrapped, or otherwise a victim of police misconduct. He asserts only the possibility that some wrongdoing *might* have occurred. Based on the evidence before this Court, we can only conclude the police techniques used did not violate due process.

### III.

Appellant's third proposition of error is that his conviction must be reversed because of insufficient evidence. Police informant Price testified that appellant sold her the narcotics in exchange for the sixty dollars given to her by the police to make the buy. Appellant contends this testimony is necessary for his conviction, yet it is untrustworthy and uncorroborated, and therefore insufficient to sustain his conviction.

When reviewing for sufficiency of the evidence, the question is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bennett v. State*, 743 P.2d 1096, 1099 (Okl.Cr.1987). Testimony of an informer who provides evidence against a defendant for personal advantage must be examined with greater care than the testimony of ordinary witnesses and the jury must determine whether the informer's testimony has been affected by interest or prejudice against the defendant. *United States v. Soares*, 456 F.2d 431 (10th Cir.1972). Undoubtedly, Price testified against appellant hoping she would receive favorable treatment from the district attorney regarding her pending felony embezzlement charge. However, we do not find this made the informant's testimony so lacking in credibility that it is insufficient to support appellant's conviction. The credibility of witnesses and the weight to be given their testimony is within the province of the jury. *Curtis v. State*, 762 P.2d 981 (Okl.Cr.1988); *Williams v. State*, 452 P.2d 595 (Okl.Cr.1969). Price never wavered from her testimony that appellant sold her the methamphetamine in exchange for the sixty dollars supplied to her by the police.

Further, there is more evidence against appellant than just the testimony of the informant. Price was searched at the police station before making the drug buy, and was determined not to be carrying any narcotics. When she returned from appellant's shop, Officer Hass testified she had approximately one-half gram of a white powdery substance later determined to be methamphetamine. Officer Poston testified that Price did not stop or pick anything up while either walking to appellant's shop to make the buy or afterward when returning to the police car. Except the five minutes she was in the shop, Price was under constant surveillance. Failure to keep an informant under constant surveillance does not render the informant's testimony unbelievable, but instead merely raises a question of credibility for the jury to consider. *Spriggs v. State*, 511 P.2d 1139, 1142 (Okl.Cr.1973). We find the evidence more than sufficient. *McDaniels v. State*, 520 P.2d 693 (Okl.Cr.1974).

### IV.

Finally, appellant claims his sentence was excessive. In his brief, appellant compares his sentence to those sentences given in the other cases resulting from information supplied by Irene Price. He feels that given his age, disability, and indigent status, his sentence should be reduced to the minimum or suspended. The excessiveness of punishment must be de-

termined by a study of all the facts and circumstances of each case. *Clark v. State*, 678 P.2d 1191, 1192 (Okl.Cr.1984). However, this Court does not have the power to modify a sentence unless it can conscientiously say that under all the facts and circumstances the sentence is so excessive that it shocks the conscience of the Court. *Davenport v. State*, 806 P.2d 655, 660 (Okl.Cr.1991); *Huntley v. State*, 750 P.2d 1134, 1136 (Okl.Cr.1988). Given that we have already modified appellant's sentence from eight (8) to five (5) years, we do not find the sentence in this case to be shocking.

Still, there is some ambiguity regarding the fine given in the case. The jury recommended a fine of five thousand dollars in addition to the eight year term of imprisonment. During the sentencing hearing, the trial judge reduced the fine to one thousand dollars, yet for unexplained reasons, the Judgment and Sentence form used by the court reflects a five thousand dollar fine. We remand the case to the trial court to enter a nunc pro tunc order correcting the journal entry of the judgment and sentence. *See Ex parte Bridges*, 322 P.2d 427 (Okl.Cr.1958); *Ex parte Harris*, 83 Okl.Cr. 280, 176 P.2d 508 (1947).

LANE, P.J., and BRETT and PARKS, JJ., concur.

LUMPKIN, V.P.J., concurs in result.

LUMPKIN, Vice–Presiding Judge, concur in results:

I concur in the results reached by the Court in this case, however, I question the discussion of due process applicability to the facts of this case.

The Court in the dicta of the case refers to a generic "due process" consideration without discussing whether it seeks to apply the literal procedural due process provisions of the Oklahoma and Federal Constitutions or the more illusive concept of "substantive due process".

In the first part of the allegation of error, Appellant objects to admissibility of testimony relating statements of Appellant to the State's informant, Irene Price.

While Appellant seeks to address this testimony in the context of his right to due process and a fair trial, it is more appropriately analyzed pursuant to the provisions of the Oklahoma Evidence Code. 12 O.S. 1981, § 2101 et seq. The testimony must be analyzed as to relevancy, Section 2401, notice, Section 2404 as defined by *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), and prejudicial versus probative value, Section 2403. Appellant does not raise the issue of failure to receive notice, which is a tenet of procedural due process. Therefore, the question is whether the evidence comports with this Court's prior decisions defining common scheme or plan evidence and whether the evidence is more probative than prejudicial. In this case, the Court properly finds the prior offenses were not connected to the current offense and therefore were not admissible.

The second allegation attempts to raise a due process argument of a more substantive nature. Basically, Appellant argues it just wasn't fair for the police to utilize an informant to obtain the evidence used against him. In effect, he asks the Court to adopt a rigid type of Marquis of Queensberry set of rules for law enforcement officers in the performance of their duties. However, the Court in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), in dealing with a similar issue, stated that the defense of entrapment is not intended "to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve. The execution of the federal laws under our Constitution is confided primarily to the Executive Branch of the Government, subject to applicable constitutional and statutory limitations and to judicially fashioned rules to enforce those limitations." 411 U.S. at 435, 93 S.Ct. at 1644. The U.S. Supreme Court, in a split decision, has recognized the possibility of this type of defense but, at the same time, recognized the cases will be rare where the concept could be applied. *See Hampton v. United States*, 425 U.S. 484, 495 n. 7, 96 S.Ct. 1646, 1653 n. 7, 48 L.Ed.2d 113 (1976); *See also United States v. Payner*, 447 U.S.

727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980) reh. denied 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1172; *United States v. Kelly,* 707 F.2d 1460 (D.C.Cir.), cert. denied 464 U.S. 908, 104 S.Ct. 264, 78 L.Ed.2d 247 (1983). The Courts recognizing the possibility of the defense, as recognized in *Hampton,* define it narrowly and often restrict its application to those cases involving coercion, violence or brutality to the person. See *Commonwealth v. Shuman,* 391 Mass. 345, 462 N.E.2d 80 (1984). The facts of this case do not remotely approach the threshold showing this possible defense would require.